PEOPLE v BRECK

Docket No. 199668. Submitted May 5, 1998, at Grand Rapids. Decided
June 23, 1998, at 9:25 A.M.

    Larry J. Breck was convicted of third-degree criminal sexual conduct
following a bench trial in the Kalamazoo Circuit Court, John F.
Foley, J., for engaging in sexual penetration with a mentally incapa-
ble person, MCL 750.520d(1)(c); MSA 28.788(4)(1)(c). The defend-
ant appealed.

    The Court of Appeals *held*:

    1. MCL 750.520a(f); MSA 28.788(1)(f) defines "mentally incapa-
ble" as "suffering from a mental disease or defect which renders
that person temporarily or permanently incapable of appraising the
nature of his or her conduct." Contrary to the defendant's conten-
tion, a mentally incapable victim's appraisal of the nature of his
conduct does not involve only the ability to be aware that a physi-
cal act is occurring; it also involves the ability to appreciate the
moral implications of the act. In this case, the prosecution estab-
lished through expert testimony that the victim was mentally
retarded and was incapable of appraising the nature of his conduct
because he could not appreciate the moral implications of sexual
relations with the defendant.

    2. Viewing the evidence in a light most favorable to the prosecu-
tion, there was sufficient evidence of sexual penetration at the
place and during the times alleged by the prosecution. The evi-
dence included the testimony of the victim and his sister and
brother.

    3. The trial court did not abuse its discretion in determining that
the victim was a competent witness. The victim, when questioned
by the trial court, exhibited sufficient intelligence and a sense of
obligation to testify truthfully and understandably.

    Affirmed.

Rape — Third-Degree Criminal Sexual Conduct — Mentally Incapable
    Victims.

    A person is "mentally incapable," for purposes of the statute that
makes it criminal sexual conduct in the third degree to engage in
sexual penetration with a person the actor knows or has reason to
know is mentally incapable, if the person suffers from a mental

defect that renders that person temporarily or permanently incapable of appraising the nature of the person's conduct; the person's appraisal of the nature of the person's conduct involves the ability to be aware that a physical act is occurring, as well as the ability to appreciate the moral implications of the act (MCL 750.520a[f], 750.520d[1][c]; MSA 28.788[1][f], 28.788[4][1][c]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Alan D. Harbaugh*, Assistant Prosecuting Attorney, for the people.

*John M. Wiewiora*, for the defendant on appeal.

Before: SAWYER, P.J., and KELLY and SMOLENSKI, JJ.

KELLY, J. Following a bench trial, defendant was convicted of third-degree criminal sexual conduct, MCL 750.520d(1)(c); MSA 28.788(4)(1)(c). He was sentenced to five to fifteen years' imprisonment. He was fifty years old at the time of sentencing. Defendant now appeals as of right. We affirm.

The charges against defendant arose out of the victim's accusation that defendant had repeatedly "raped" him.[1] Expert testimony established that the victim, sixty seven years-old at the time of trial, was "mentally retarded."

Defendant was charged under MCL 750.520d(1)(c); MSA 28.788(4)(1)(c), which provides that a person is guilty of committing criminal sexual conduct if he engages in penetration with another person whom he knew or had reason to know was mentally incapable. MCL 750.520a(f); MSA 28.788(1)(f) defines "mentally incapable" as "suffer[ing] from a mental disease or defect which renders that person temporarily or per-

---

[1] The victim alleged that defendant engaged in repeated acts of anal intercourse with him.

manently incapable of appraising the nature of his or her conduct." At trial, the prosecutor alleged, and the trial court found, that the victim was incapable of consenting to acts of sexual intercourse with the defendant because the victim was "mentally incapable." On appeal, defendant argues that a plain reading of the statute indicates that the statute only prohibits sexual relations with persons who are unable to understand the physical nature of the act because of mental disease or defect. This is an issue of first impression in this jurisdiction.

At the close of the prosecution's case, defendant moved for a directed verdict on the basis that the prosecution had not proved that the victim was incapable of "appraising the nature of his conduct" in light of the fact that the victim stated that he knew what defendant was going to do to him each time they were alone but that he did not have the power to stop it. Defendant argued that whether the victim could comprehend the moral consequences of the sexual acts he engaged in with defendant was irrelevant, as long as the victim knew that the acts were occurring and was doing nothing to stop them. The prosecution argued that the victim could not appreciate the moral consequences of the acts, there was testimony to this effect, and therefore this element was proved. The trial court concluded that the legislative intent of the statutory language in question was to protect mentally incapable individuals because of their inherent inability to consent to sexual relations and found that without an understanding of the moral quality of the act, a person cannot intelligently and truly consent to such an act.

We agree with the conclusion reached by the trial court. First, we note that defendant does not cite any authority in support of his position that "ability to appraise the nature of his or her conduct" is limited to an awareness that the physical act is occurring. Defendant's position is also inconsistent with a logical interpretation of the statute. In essence, it would limit the protections of the statute to those individuals who are so divorced from reality that they are not even aware of what is happening to them physically. However, that small group of individuals would be covered under one of the other designations of either "mentally incapacitated" or, more appropriately, "physically helpless," which includes persons who are unconscious, asleep, or for any other reason physically unable to communicate unwillingness to participate in an act. MCL 750.520a(i); MSA 28.788(1)(i). Thus, to construe the statutory language in the manner advocated by defendant would strip the statute of the protection that the Legislature intended for those individuals, like the victim, who know what is happening to them but are incapable of protesting or protecting themselves because of a severely diminished intellectual capacity.

In construing statutory language substantially similar to our own[2] and on facts very similar to those in the present case, the New York Court of Appeals in *People v Easley*, 42 NY2d 50, 56-57; 396 NYS2d 635; 364 NE2d 1328 (1977), held as follows:

---

[2] Subdivision 5 of § 130.00 of the New York Penal Law states that "mentally defective" means a person who "suffers from a mental disease or defect which renders him incapable of appraising the nature of his conduct."

An ability to "appraise" is, of course, a qualitative matter, all the more so when the appraisal is one to be made of the "nature" of "conduct," with the variety of factors that the one "appraising" may have to take into account for such purposes. Cognitive understanding is involved. In a case such as the one before us, it includes being substantially able to understand what she was doing. An understanding of coitus encompasses more than a knowledge of its physiological nature. An appreciation of how it will be regarded in the framework of the societal environment and taboos to which a person will be exposed may be far more important. In that sense, the moral quality of the act is not to be ignored.

This is to be distinguished, however, from the participating woman's personal sense of morality. Whether her character is exemplary or depraved is beside the point. The object is not to probe the degree of her conformity or nonconformity to the norms of society. A knowing defiance of social mores, a mere yielding to temptation or passion, even an inclination to vice, these are not the concern of this statute.

But to flaunt society or to arraign oneself against its view is entirely different from having an understanding, or the capacity to understand, that one is doing so. Whether there is an awareness of the social or other cost of one's conduct is a legitimate area of inquiry in determining whether one is so mentally defective that the protective shield of section 130.05 of the Penal Law is invoked. Such inquiry should of course include the question of whether the person whose mentality is being judged has insight into the "consequences" of conduct for which the law exacts criminal penalties.

But that is not enough. The law does not mirror all prevailing moral standards. Therefore, there also needs to be inquiry as to whether there is a capacity to appraise the nature of the stigma, the ostracism or other noncriminal sanctions which society levies for conduct it labels only as immoral even while it yet "struggles to make itself articulate in law." Put in terms of this case, in its determination of [the victim's] capacity to appraise the sexual act, its signifi-

> cance and its consequences, the jury may well have been required to consider the "moral quality" of the act as it would be measured by society and to assess as well her ability to appreciate that fact. [Citations omitted.]

We find persuasive, and therefore adopt, the reasoning contained in the *Easley* decision and hold that the statutory language in question is meant to encompass not only an understanding of the physical act but also an appreciation of the nonphysical factors, including the moral quality of the act, that accompany such an act. This conclusion is bolstered by this Court's prior indications that the rationale behind the statutes prohibiting sexual relations with a mentally incapable person is that such a person is presumed to be incapable of truly consenting to the sexual act. See *People v Davis*, 102 Mich App 403; 301 NW2d 871 (1980); *People v Khan*, 80 Mich App 605; 264 NW2d 360 (1978).

In this case, psychologist George Starrett testified that he did not believe that the victim, whom he described as "mentally retarded," was capable of making an informed decision about whether to engage in sexual relations because he would not understand the long-term ramifications of safe sex or of engaging in a homosexual relationship. Dr. Starrett stated that the victim did not have a basic understanding of the nature of a romantic relationship and that he was a trusting individual who would quickly make a person his friend and do anything that person asked him to do. Dr. Starrett opined that the victim would be unable to make personality or character judgments about people and would be unable to tell a moral person from an immoral person. From the testimony presented at trial, it is clear to us that the vic-

tim was unable to appraise the nature of the sexual activity in this case as either morally right or wrong. Nor did the victim understand that others could not engage in sexual activity with him without his consent. Thus, contrary to defendant's claim, the prosecution proved that the victim suffered from a mental disease or defect that rendered him incapable of appraising the nature of his conduct.

Next, defendant claims that the evidence was insufficient to convince a rational trier of fact beyond a reasonable doubt that an act of sexual penetration occurred in the victim's house in Kalamazoo County between July 21, 1993, and September 12, 1993. We disagree.

Due process requires the prosecution in a criminal case to introduce sufficient evidence to justify a trier of fact in its conclusion that the defendant is guilty beyond a reasonable doubt. *People v Fisher*, 193 Mich App 284, 287; 483 NW2d 452 (1992). In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find the essential elements of the crime were proved beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992); *People v Jacques*, 215 Mich App 699, 702-703; 547 NW2d 349 (1996).

In this case, viewing the evidence in a light most favorable to the prosecution, we believe that sufficient evidence was introduced, including the testimony from the victim, the victim's sister, and the victim's brother, to indicate that defendant sexually assaulted the victim in Kalamazoo County. Furthermore, the victim specified that "rape" meant that

defendant would put his penis in the victim's anus, that it happened in the victim's house during the time when the victim's niece was in town, which was approximately July 20, 1993, and the "rapes" stopped occurring in September of 1993, after the victim reported defendant's misconduct to the police. In fact, contrary to defendant's claim, we believe that the evidence was more than sufficient to support defendant's conviction. *Wolfe, supra* at 515.

Lastly, defendant claims that the trial court abused its discretion in determining that the victim was a competent witness under MRE 601. According to defendant, the victim did not have sufficient mental capacity or sense of obligation to testify truthfully or understandably. We disagree.

The determination of the competency of a witness is a matter within the discretion of the trial court. *People v Burch*, 170 Mich App 772, 774; 428 NW2d 772 (1988). Such determination will be reversed only for an abuse of discretion. *Id.* MRE 601 states the general rule of competency of witnesses.[3] In applying MRE 601, "the test of competency of a witness does not focus on whether a witness is able to tell right from wrong but, rather, on whether a witness has the capacity and sense of obligation to testify truthfully and understandably." *Burch, supra* at 774. Under MCL 600.2163; MSA 27A.2163,[4] the statute governing

---

[3] MRE 601 states as follows: "Unless the court finds after questioning a person that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules."

[4] MCL 600.2163; MSA 27A.2163 provides as follows:

Whenever a child under the age of 10 years is produced as a witness, the court shall by an examination made by itself publicly, or

a child witness' competency to testify, the court must ascertain whether the witness has sufficient intelligence and sense of obligation to tell the truth.[5]

Under either standard, the victim was competent to testify. During extensive questioning by the trial court, the victim exhibited sufficient intelligence and a sense of obligation to testify truthfully and understandably. The fact that he became confused at some points during the questioning was a sign that his mental capacity was less than normal; however, despite this incapacity, the victim clearly showed that he understood the obligation to testify truthfully, and in fact, he became upset when he felt that he was being accused of lying. The trial court did not abuse its discretion in determining that the victim was competent to testify in this matter. *Burch, supra* at 774.

Affirmed.

---

separate and apart, ascertain to its own satisfaction whether such child has sufficient intelligence and sense of obligation to tell the truth to be safely admitted to testify; and in such case such testimony may be given on a promise to tell the truth instead of upon oath or statutory affirmation, and shall be given such credit as to the court or jury, if there be a jury, it may appear to deserve.

[5] Although the mentally impaired victim was sixty-seven years old, according to expert testimony the victim had a mental age of approximately seven years. This Court has suggested that in a case in which the witness is over the age of ten but mentally impaired, it is appropriate for the trial court to engage in the type of questioning mandated by MCL 600.2163; MSA 27A.2163. *Burch, supra* at 775.