# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TODD ALLEN WHEELER,

        Defendant-Appellant.

UNPUBLISHED
September 20, 2016

No. 327634
Kent Circuit Court
LC No. 14-010346-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HOOPER JACKSON PARSLEY,

        Defendant-Appellant.

No. 327924
Kent Circuit Court
LC No. 14-010337-FH

Before: SERVITTO, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

In these consolidated appeals, both defendants appeal as of right their jury trial convictions.

In Docket No. 327634, defendant Todd Allen Wheeler was convicted of three counts of third-degree criminal sexual conduct (counts one and two, penis-vaginal penetration knowing or having reason to know that the victim is mentally incapable or mentally incapacitated; count three, penis-oral penetration knowing or having reason to know that the victim is mentally incapable or mentally incapacitated), MCL 750.520d(1)(c). Wheeler was sentenced as a second-offense habitual offender, MCL 769.10, to 14 to 22 years, 6 months' imprisonment, with credit for 197 days served, on each count with the sentences to run concurrently.

In Docket No. 327924, defendant Hooper Jackson Parsley was convicted of three counts of third-degree criminal sexual conduct (count one, penis-vaginal penetration knowing or having reason to know that the victim is mentally incapable or mentally incapacitated; count two penis-

oral penetration knowing or having reason to know that the victim is mentally incapable or mentally incapacitated; count three, penis-anal penetration knowing or having reason to know that the victim is mentally incapable or mentally incapacitated), MCL 750.520d(1)(c). Parsley was sentenced as a repeat criminal sexual conduct offender, MCL 750.520f, and a fourth-offense habitual offender, MCL 769.12, to 14 to 30 years' imprisonment, with credit for 46 days served, on each count with the sentences to run concurrently.

First, both defendants argue that the evidence was insufficient to support their convictions, which came at the conclusion of a joint trial. A challenge to the sufficiency of the evidence supporting a criminal conviction is reviewed de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). This Court considers the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the essential elements of the crime beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

"[A] person is guilty of committing [third-degree] criminal sexual conduct if he engages in [sexual] penetration with another person whom he knew or had reason to know was mentally incapable." *People v Breck*, 230 Mich App 450, 451; 584 NW2d 602 (1998), citing MCL 750.520d(1)(c). " 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). " 'Mentally incapable' means that a person suffers from a mental disease or defect that renders that person temporarily or permanently incapable of appraising the nature of his or her conduct." MCL 750.520a(j).

In *Breck*, this Court held that the ability to appraise the nature of conduct "is meant to encompass not only an understanding of the physical act but also an appreciation of the nonphysical factors, including the moral quality of the act that accompany such an act." *Breck*, 230 Mich App at 455. The victim in *Breck* was determined incapable of appraising the nature of his conduct because he "was unable to appraise the nature of the sexual activity in this case as either morally right or wrong" and did not "understand that others could not engage in sexual activity with him without his consent." *Id*. at 455-456. This conclusion was based on testimony from a psychologist that the victim was "mentally retarded," "did not have a basic understanding of the nature of a romantic relationship," was a trusting person who "would quickly make a person his friend and do anything that person asked him to do," was "unable to make personality or character judgments about people," and was incapable "of making an informed decision about whether to engage in sexual relations because he would not understand the long-term ramifications of safe sex or of engaging in a homosexual relationship." *Id*. at 455. In reaching its holding, the *Breck* Court stated that "the rationale behind the statutes prohibiting sexual relations with a mentally incapable person is that such a person is presumed to be incapable of truly consenting to the sexual act." *Id*.

In *People v Cox*, 268 Mich App 440, 443-444; 709 NW2d 152 (2005), this Court concluded that there was sufficient evidence "that the victim was mentally incapable of consenting to the sexual relationship with defendant" because the victim did not understand the nonphysical aspects of his sexual conduct. The defendant in *Cox* argued that the victim understood the physical act of sex as well as the nonphysical and moral aspects of the act, and

the victim was therefore mentally capable to consent to sexual relations. *Id.* at 443. Defendant noted that "the victim attended school, was able to perform automotive repairs, could hold conversations and maintain relationships with people, and could choose his sexual partner." *Id.* However, a psychologist testified that the victim "was mentally deficient," functioned in the range of intelligence that is one step above "mental retardation," had the mental function of between an 11 and 13 year old although he was actually 17 years old, functioned "in the lowest three to five percent range" as compared to his peers, tended not to think about the consequences of his actions beforehand, was easy to manipulate, was a follower, and was "vulnerable to exploitation." *Id.* at 442, 444-445. It was the psychologist's opinion that although the victim was aware of his sexual conduct, "he could not appreciate the social or moral significance of his acts relating to the homosexual encounter with defendant and was incapable of making an informed decision about sexual involvement." *Id.* at 445. There was further testimony that the victim was not ready to live independently, functioned at the emotional level of an eight to ten year old, and was at a fourth or fifth grade intellectual level. *Id.* at 444-445. This Court concluded that the record evidence supported that, "regardless of the victim's awareness of the events as they occurred, he did not understand the nonphysical aspects of the sex acts . . . ." *Id.* at 445.

Here, the evidence was sufficient to support Wheeler's convictions related to his victim, E.S. As an 18-year-old, E.S. functioned at a first or second grade academic level and her life skills were at an elementary level. Her intellectual abilities were in the bottom second percentile, she demonstrated an IQ of 67 to 75[1], and she was in a specialized program at her school for students with cognitive impairments. E.S. struggled with her personal hygiene, such as taking showers, brushing her teeth, and taking medications, and she required frequent reminders to complete these tasks. Although E.S. knew that Wheeler was infected with diseases that could be passed to her through sexual contact, she did not know the names of those diseases; she did not know that she could become infected through semen; she did not know what semen was, and she engaged in unprotected oral sexual intercourse on more than one occasion. The school psychologist opined that E.S. was "at great risk of being taken advantage of" and was incapable of evaluating the possible long-term consequences of sexual activity. Further, E.S. had trouble problem solving, was easily manipulated and victimized, and was a follower. Another psychologist testified that E.S. did not always recognize unsafe situations, and sometimes took risks without thinking through the possible consequences of her behavior.

Although E.S. believed that she was capable of making decisions regarding engaging in sexual activity, understood some important aspects of sexual activity like using condoms to avoid pregnancy, and was capable of a certain degree of independence in some areas, those facts do not necessarily mean that she is capable of appraising the nature of her sexual conduct such that she could truly consent to a sexual relationship. See, e.g., *id.* at 443-446. Like the victim in *Cox*, E.S. was similarly cognitively impaired, vulnerable, and unable to understand the potential consequences of her sexual conduct. Viewing the evidence in the light most favorable to the prosecution, a rational jury could find beyond a reasonable doubt that E.S. suffered from a

---

[1] A psychologist testified at trial that the "average" range for IQ tests is typically 90 to 109.

mental defect that rendered her incapable of appraising the nature of her conduct and was therefore mentally incapable of consenting to a sexual relationship because she did not possess an understanding of both the physical act and the accompanying nonphysical aspects of the sexual conduct. See *id*. at 445-446; *Breck*, 230 Mich App at 455.

The evidence was also sufficient to support Parsley's convictions related to his victim S.W. As an 18 year old, S.W. functioned at a first or second grade academic level and her life skills were at an elementary level. Her intellectual abilities were in the bottom first percentile, she demonstrated an IQ of 63 to 71, and she was in the cognitive impairment program with E.S. Despite her knowledge of birth control, S.W. chose to stop taking her birth control and to engage in sexual relations with Parsley without using any form of birth control. She was not concerned about becoming pregnant. S.W. took no precautions to protect herself from sexually transmitted diseases, despite knowing that there is a general risk of contracting diseases by having unprotected intercourse. The school psychologist opined that S.W. was "in a vulnerable position right now" and did not understand the consequences of her sexual behavior. Although S.W. believed that she was capable of making decisions regarding whether to engage in sexual activity, there was testimony that S.W. puts herself in dangerous situations without being aware of the consequences and has a tendency to repeat behaviors without learning from previous negative outcomes. A psychologist testified that S.W. was "independent in the areas of eating and toileting," required reminders to shower and take medications, and did not recognize the potential danger of inviting a man whom she had just met on social media to her house the same day. This evidence demonstrates that S.W. also possessed cognitive and psychological traits similar to those of the victim in *Cox*. Viewing the evidence in the light most favorable to the prosecution, a rational jury could find beyond a reasonable doubt that S.W. suffered from a mental defect that rendered her incapable of appraising the nature of her conduct and was therefore mentally incapable of consenting to a sexual relationship because she did not possess an understanding of both the physical act and the accompanying nonphysical aspects of the sexual conduct. See *Cox*, 268 Mich App at 445-446; *Breck*, 230 Mich App at 455.

In Docket No. 327924, Parsley additionally argues that the trial court erred by denying his pre-trial motion to sever the trials because he was prejudiced by his joint trial with Wheeler. The issue is preserved. See *People v Mayfield*, 221 Mich App 656, 660; 562 NW2d 272 (1997). Our review of a trial court's decision not to sever is two-part. First, we review *de novo* whether the joined offenses are related as a matter of law and thus eligible for joinder. *People v Tobey*, 401 Mich 141, 153; 257 NW2d 537 (1977), superseded on other grounds as stated in *People v Williams*, 483 Mich 226; 769 NW2d 605 (2009); *People v Abraham*, 256 Mich App 265, 271; 662 NW2d 836 (2003). If we conclude that the offenses are eligible for joinder, we then review for an abuse of discretion a trial court's decision regarding the severance of trials when multiple defendants are involved. *People v Bosca*, 310 Mich App 1, 43; 871 NW2d 307 (2015), app held in abeyance 872 NW2d 492 (2015). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

Defendant did not preserve his alternative argument, that he is at least entitled to a new trial with separate juries, because he never requested a joint trial with separate juries. See *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993) ("An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground."). Unpreserved

issues are reviewed for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

MCR 6.121(A) provides:

**(A) Permissive Joinder.** An information or indictment may charge two or more defendants with the same offense. It may charge two or more defendants with two or more offenses when

(1) each defendant is charged with accountability for each offense, or

(2) the offenses are related as defined in MCR 6.120(B).

When more than one offense is alleged, each offense must be stated in a separate count. Two or more informations or indictments against different defendants may be consolidated for a single trial whenever the defendants could be charged in the same information or indictment under this rule.

MCR 6.120(B)(1), in turn states, in relevant part:

For purposes of this rule, offenses are related if they are based on

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

The staff comment to MCR 6.121 indicates that "[t]he standard for permitting joinder is patterned after 2 ABA Standards for Criminal Justice (2d ed), Standard 13-2.2(a)." That standard provides:

(a) Two or more defendants may be joined in one accusatory instrument:

(i) charging one offense, or charging two or more unrelated offenses (with each offense stated in a separate count) when each of the defendants is charged with accountability for each offense included; or

(ii) charging two or more offenses (with each offense stated in a separate count) when the offenses are alleged to be related. [*Id.*]

The staff comment to MCR 6.120 indicates that "[t]he standard in subrule (B), defining when two offenses 'are related,' is derived from ABA Standard 13-1.2, and a predecessor standard, ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance (Approved Draft, 1968), Standard 1.1. Elaboration on this standard may be found in *People v Tobey*, 401 Mich 141 (1977)." ABA Standard 13-1.2 states, "[t]wo or more offenses are related offenses if they are based upon the same conduct, upon a single criminal episode, or

-5-

upon a common plan." Our Supreme Court has determined that *Tobey*, 401 Mich 141, has been superseded by MCR 6.120, despite the staff comment. See, *Williams*, 483 Mich 226.

Here, each defendant had a different victim and each was charged separately. Each defendant was charged with conduct relating to penetration of a different victim and no specific dates or times of the penetrations were provided other than September 1, 2014 through September 19, 2014. No conspiracy was alleged, and neither defendant was charged with aiding or abetting the other. Each defendant also had a separate preliminary examination. However, at some point, it was decided (by the trial court on its own motion, presumably, as neither the prosecutor or either defendant moved for a joint trial) that defendants would be tried jointly.[2] Because they were not charged with accountability for each other's offenses, Parsley and Wheeler's informations could be consolidated for a single trial only if each defendant could be charged in the same information or indictment under MCR 6.121(A)(2). That is, the offenses must be "related" as that term is defined in MCR 6.120(B)(1).

Working backward, we first consider whether these defendants' offenses were "a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1)(c). In *Williams*, 483 Mich at 228, our Supreme Court determined whether joinder of two offenses, occurring several months apart, for one trial against the same defendant was proper under the prior version of MCR 6.120.[3] Our Supreme Court noted that although the offenses were committed months apart by the defendant, they both involved the defendant's breaking down cocaine and packing it for distribution. Citing the "well-established principle that [w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate," the *Williams* Court determined that "the offenses charged were related because the evidence indicated that defendant engaged in ongoing acts constituting parts of his overall scheme or plan to package cocaine for distribution." *Id*. at 235, 237 (internal quotation marks and citations omitted). In *People v McCune*, 125 Mich App 100, 103; 336 NW2d 11 (1983), this Court quoted the commentary to successor ABA Standard 13-1.2 with respect to "common plan."

> Common plan offenses are the most troublesome class of related offenses. These offenses involve neither common conduct nor interrelated proof. Instead, the relationship among offenses (which can be physically and temporally remote) is dependent upon the existence of a plan that ties the offenses together and demonstrates that the objective of each offense was to contribute to the achievement of a goal not attainable by the commission of any of the individual offenses. A typical example of common plan offenses is a series of separate offenses that are committed pursuant to a conspiracy among two or more

---

[2] Notably, the staff comment to MCR 6.121 states that, "[a] joinder of cases for trial may be based on a prosecution or defense motion."

[3] At the time of the *Williams* defendant's trial, MCR 6.120 defined "related" offenses for purpose of joinder and severance as those based on "(1) the same conduct, or (2) a series of connected acts or acts constituting part of a single scheme or plan." *Williams*, 483 Mich at 233.

defendants. Common plan offenses may also be committed by a defendant acting alone who commits two or more offenses in order to achieve a unified goal.

The charges against each of the defendants in this matter are not logically related to each other; there is no large area of overlapping proof, and each defendant could attain his own goal by committing his own individual offenses. Wheeler was charged with CSC with respect to his actions with E.S. and Parsley was charged with his actions of CSC with respect to S.W. There was no evidence or indication that defendants assisted each other or that their separate acts with separate victims were part of any common plan. If both defendants had gone to a specific place together and systematically groomed young women for the specific purpose of sexually assaulting them (i.e., aiding each other in accomplishing a common goal or both assaulting the same victim), this type of joinder would be justified. Those circumstances are not present here. There is no evidence that defendants here shared a similar motive or employed a similar method.

Moreover, to present all of the essential facts at each defendant's trial does not require the same evidence. E.S.' testimony concerning Wheeler was not necessary to obtain a conviction against Parsley for his actions against S.W. and vice versa. Nor was there any other commonality of evidence. A psychologist's testimony concerning the mental capabilities of each victim was relevant only to that specific victim and thus that specific defendant's charges.

Defendants' charges also did not present "a series of connected acts." MCR 6.120(B)(1)(b). In *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003) this Court found that joinder of a defendant's charges for the murder of two different victims was appropriate "because the shootings occurred within a couple of hours of each other in the same neighborhood, with the same weapon, and were part of a set of events interspersed with target shooting at various outdoor objects. Further, the same witnesses testified to a single state of mind applicable to both offenses." Here, neither Wheeler's nor Parsley's actions were connected to each other. While Parsley did meet his victim through Wheeler because the two defendants lived together, this is a temporal connection, at most. There is no indication that the actual acts of CSC committed by each defendant against his respective victim occurred on the same dates or when both defendants were present.

Finally, the third basis upon which offenses may be considered related under MCR 6.120(B)(1)(c) is if the offenses are based on the same conduct or transaction. We do not find that situation present here.

In *People v Miller*, 165 Mich App 32, 45; 418 NW2d 668 (1987) a single defendant was charged with and convicted of one count of first degree criminal sexual conduct (CSC) and one count of second degree CSC stemming from his alleged molestation of a young boy over a four month period. Defendant sought to have the two count information severed for purposes of trial and the trial court denied his motion, ruling that the two charges would be tried in a single proceeding. On appeal, our Supreme Court found no error in the trial court's ruling, given that that the two acts indicated a series of acts constituting a single scheme or plan. *Id*. at 45. In so ruling, however, the Court first noted that "the charges against defendant are not based on the 'same conduct' since the evidence does not indicate a single transaction." *Id*. In *Williams*, 483 Mich 235 n 8, citing See 2 ABA Standards for Criminal Justice (2d ed.), ch. 13, p. 11, our Supreme Court noted that "[o]ffenses committed at different times and places are not 'related'

-7-

merely because they are of the same or similar character." Further, the commentary to the ABA Standards Relating to Joinder and Severance, Standard 13-1.2, instructs:

> The simplest example of a "same conduct" offense may be the case where the defendant's single physical act injures two persons, as where a single gunshot hits two victims. More complex same conduct offenses may involve a course of conduct, as where the same series of physical acts generates charges of resisting arrest and assault.

Again, Wheeler's and Parsley's offenses were committed by each of them, individually, against separate victims. While the offenses each defendant committed may be of similar character, neither's actions generated or caused the charges of the other. Joinder was thus improper because Wheeler and Parsley's charges were not "related" as that term is defined for purposes of joinder. MCR 6.121; MCR 6.120. The trial court erred as a matter of law in joining defendants' charges for trial. See *Williams*, 483 Mich at 231 ("To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate. Because this case presents a mixed question of fact and law, it is subject to both a clear error and a de novo standard of review.")

MCR 6.121(B) provides that "[o]n a defendant's motion, the court must sever offenses that are not related as defined in MCR 6.120(B)." Because this rule uses the mandatory "must," the trial court was *required* to sever defendants' charges for trial due to their unrelated nature. See, *In re Forfeiture of Bail Bond*, 496 Mich 320, 328; 852 NW2d 747 (2014) ("the term 'shall,'. . . is a mandatory term, not a permissive one")(quotation omitted). Though Parsley was entitled, by right, to a separate trial, without a necessary showing of prejudice, we note that the fact that defendants here were tried before one jury for unrelated acts casts each defendant in a more negative light by virtue of the fact that they knew other and that the victim in Parsley's case was Wheeler's daughter.

In Docket No. 327634, we affirm defendant Wheeler's conviction based on the grounds presented for appeal. In Docket No. 327924, we reverse defendant Parsley's conviction because the trial court erred as matter of law in joining his and Wheeler's charges for trial and we remand for a new, separate trial. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher