*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DAN MATHES, IV,

       Defendant-Appellant.

UNPUBLISHED
September 10, 2020

No. 347873
Oakland Circuit Court
LC No. 2018-267626-FC

Before: MARKEY, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of first-degree arson, MCL 750.72. Defendant was sentenced to 42 months to 20 years' imprisonment for his arson conviction. Defendant argues that the prosecution failed to present sufficient evidence to support the intent element of his first-degree arson conviction, and thus asserts a denial of due process. This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1). We affirm.

## I. UNDERLYING FACTS

This case arises out of defendant's involvement in a fire that occurred on June 18, 2018, between 3:45 a.m., and 4:00 a.m., in vacant unit 323 of the Carriage Circle apartments in Pontiac, Michigan. The Carriage Circle apartments is a multistory apartment building (the apartment building) containing approximately 234 units, with approximately 35 vacant units at the time of the incident. Defendant's daughter, her mother, and the maternal grandmother of defendant's daughter resided on the fifth floor of the apartments when the incident occurred. Defendant entered the apartment building through a side door at about 2:40 a.m. the morning of the fire, entered and quickly exited unit 323, and then left the apartment building shortly thereafter. About 30 minutes later, defendant reentered the apartment building through a side door, but he had changed his clothes, wore a towel over his head, and was carrying two black bags. Defendant entered unit 323 and, about two minutes later, exited unit 323 wearing a bandana over his face. Smoke could soon be seen coming from unit 323; defendant did not inform anyone of the fire. Defendant eventually admitted that he started the fire, but asserts it was done accidentally while smoking crack cocaine

-1-

because he attempted to extinguish his pipe in a cup of unknown liquid that caused the fire. Defendant's left leg was burned as a result of the fire, but he was otherwise unharmed.

## II. ANALYSIS

A valid criminal conviction requires proof beyond a reasonable doubt of every element of every crime. *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994). A challenge to the sufficiency of the evidence to support a criminal conviction presents a question of law subject to review de novo. *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001). When reviewing the sufficiency of evidence in a criminal case, a reviewing court must view the evidence of record in the light most favorable to the prosecution to determine whether a rational trier of fact could find that each element of the crime was proved beyond a reasonable doubt. *Id.* A reviewing court "must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748, amended 441 Mich 1201 (1992) (citation and quotation marks omitted). Our "standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (citation omitted). "Conflicting evidence and disputed facts are to be resolved by the trier of fact. Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019) (citations omitted). Finally, "[d]ue process requires the prosecution in a criminal case to introduce sufficient evidence to justify a trier of fact in its conclusion that the defendant is guilty beyond a reasonable doubt." *People v Breck*, 230 Mich App 450, 456; 584 NW2d 602 (1998). As such, a conviction based on insufficient evidence violates due process. See *id*.

Michigan's first-degree arson statute, MCL 750.72, states, in relevant part:
(1) A person who willfully or maliciously burns, damages, or destroys by fire or explosive any of the following or its contents is guilty of first[-]degree arson:

(a) A multiunit building or structure in which 1 or more units of the building are a dwelling, regardless of whether any of the units are occupied, unoccupied, or vacant at the time of the fire or explosion.

*  *  *

(3) First degree arson is a felony punishable by imprisonment for life or any term of years or a fine of not more than $20,000.00 or 3 times the value of the property damaged or destroyed, whichever is greater, or both imprisonment and a fine.

Thus, the prosecution is required to prove three elements to establish first-degree arson: (1) "a dwelling house was burned[,]" (2) "by . . . the defendant," and (3) "the fire was wilfully or

maliciously set." *People v Lindsey*, 83 Mich App 354, 355; 268 NW2d 41 (1978) (citation omitted).[1]

"Maliciously" and "willfully" are terms that "have acquired a peculiar and appropriate meaning in the law," and thus must be "understood according to [that] meaning." MCL 8.3a. "Malicious" is defined as "[s]ubstantially certain to cause injury" or "[w]ithout just cause or excuse." *Black's Law Dictionary* (11th ed). See also *People v Harris*, 495 Mich 120, 136; 845 NW2d 477 (2014) (adopting the similar definition of malice from Black's Law Dictionary).[2] "Willful" is defined as "[v]oluntary and intentional, but not necessarily malicious." *Black's Law Dictionary* (11th ed). See also *People v Fennell*, 260 Mich App 261, 267; 677 NW2d 66 (2004) (adopting the Black's Law Dictionary definition of "willful").

Defendant concedes that he started a fire that burned unit 323, i.e. a dwelling house. Thus, the first two elements of first-degree arson are undisputed. Indeed, these elements were established by defendant's testimony and the evidence at trial. But defendant argues that the prosecution failed to present sufficient evidence establishing that he willfully or maliciously set a fire in unit 323. Contrary to defendant's assertion, however, the prosecution did establish the intent element of first-degree arson because sufficient evidence was submitted to show the fire was the result of defendant's "willful" or "malicious" actions.

When defendant reentered the apartment building, he did so in the early morning hours and through a side door. Furthermore, defendant had changed the shirt he was seen wearing approximately 30 minutes earlier and he wore a white towel over his head which covered part of his face. Defendant also wore a white glove on his right hand and carried two black bags. Defendant's behavior suggests an attempt to conceal his identity and he appeared to have more items in his possession than those necessary to smoke crack. Additionally, defendant admitted at trial that he initially lied to investigators about his role in the fire and that he lied to a nurse who treated him for burns he sustained from the fire; defendant initially blamed his injuries on a motorcycle accident. Defendant's rapid exit from the building at the start of the fire, without notifying anyone of the situation, along with his untruthful statements to police, constitute behaviors that permit the imputation of consciousness of guilt. See *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008) ("A jury may infer consciousness of guilt from evidence of lying or deception.").

When defendant entered unit 323, at approximately 3:46 a.m., no smoke visibly emanated from the unit. Yet, when defendant exited just minutes later, at approximately 3:48 a.m., defendant's face was covered with a bandana, a cloud of black smoke came from the apartment, and the fire alarms were ringing. Given defendant's short interval of time in the unit between entry

---

[1] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citation omitted).

[2] Black's Law Dictionary defines "malice" as "1. The intent, without justification or excuse, to commit a wrongful act. 2. Reckless disregard of the law or of a person's legal rights." *Black's Law Dictionary* (11th ed).

and the initiation of the fire, a reasonable juror could infer defendant was engaged in setting the fire rather than smoking crack.

Significantly, Lieutenant Jeffrey Donald Hunter of the Waterford Fire Department responded to the fire and observed smoke coming out of unit 323. On entry, Lieutenant Hunter and the other firefighters extinguished three separate fires in the unit: (1) in the closet; (2) in the dining area; and (3) in the bathroom. Lieutenant Hunter observed multiple burn patterns on the carpet and detected the odor of an accelerant, which he opined was used to light the three separate fires. Similarly, Captain John Phebus of the Waterford Fire Department smelled gasoline vapors when he arrived at the unit. Captain Phebus also observed three unconnected points of origin for the fires, and explained at trial that: (1) a "flash fire" occurred in the closet and in the dining area, as a result of a flammable liquid, (2) the quantity of fire accelerant located on the carpet was greater than an amount of liquid that could have been contained in a cup, and (3) burn patterns between the closet and dining area were three feet apart. Captain Phebus additionally opined that the liquid burn pattern on the bathroom floor resulted from gasoline or a flammable liquid. Both Lieutenant Hunter and Captain Phebus observed an object in the bathroom that appeared to function as a wick for the fire, and eliminated the possibility of a more benign origin for the fire. Captain Phebus also opined the fire was caused intentionally.

When considered together and viewed in the light most favorable to the prosecution, the testimony of Captain Phebus and Lieutenant Hunter establishes that an accelerant was used to set a fire in three separate locations within unit 323.[3] Additionally, their testimony refutes defendant's testimony that the fire started when he attempted to extinguish his crack pipe in a cup of unknown liquid, because defendant's version of events failed to explain how the fire started in three separate locations and Captain Phebus opined that more accelerant was used than could fit in a single cup. Additionally, surveillance video from the apartment building showed that defendant left the apartment building for about 30 minutes in the middle of the night, changed his clothes, and then returned through a side door carrying two black bags while attempting to conceal his identity by covering his face with a towel. Such circumstantial evidence could be considered as proof that defendant did not wish to be identified when he returned to unit 323 immediately before the fire was set. Similarly, defendant did not notify anyone when he left unit 323 after the fire started. In summary, defendant was the only individual present in unit 323 when the fire began and the prosecution offered evidence establishing that the fire was intentionally started in three separate locations with the use of an accelerant. As such, there was circumstantial evidence for a rational juror to consider establishing that defendant set the fire either willfully or maliciously. Thus, there was sufficient evidence for a rational juror to find beyond a reasonable doubt that defendant committed first-degree arson. See *Miller*, 326 Mich App at 735.

---

[3] We note that use of an accelerant is not a necessary element of first-degree arson. See MCL 750.72.

## III. CONCLUSION

For the reasons stated in this opinion, defendant's first-degree arson conviction is affirmed.

/s/ Jane E. Markey
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel