*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIMOTHY JOSEPH WHITE,

        Defendant-Appellant.

UNPUBLISHED
March 25, 2021

No. 348009
Jackson Circuit Court
LC No. 17-005235-FC

Before: O'BRIEN, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

Defendant, Timothy Joseph White, appeals as of right his jury trial conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(h)(*ii*) (victim was mentally incapable, mentally disabled, mentally incapacitated, or physically helpless and defendant used authority to coerce the victim). The trial court sentenced defendant to 36 to 70 months' imprisonment. We affirm.

The victim in this matter was 35 years old at the time of the offense, but she functioned at the level of a child between the ages of 6 and 10 years old. Defendant had dated the victim's mother for approximately 11 years. On the day of the offense, defendant stayed alone with the victim at her home while the victim's mother and brother went to the store. When the victim's 23-year-old brother unexpectedly returned, he found defendant "thrusting" on top of the victim on her bed. The victim disclosed that she had asked defendant to have sex. Defendant had attempted to penetrate her vagina with his penis, but because it hurt her, he instead rubbed his penis on her body. The victim's brother called 911, and the victim's mother took her to the hospital for an examination.

Defendant was charged with CSC-I. At trial, the victim testified that on additional occasions prior to the date of the sentencing offense, defendant had licked her vagina, touched her, rubbed his penis on her, and put his penis into her vagina. The victim was not sure when the incidents began, but she reported that the first time it happened, it was defendant's idea and she did not know what sex was. The victim testified that defendant told her to keep the sexual acts secret from her mother. The victim's mother and brother testified about the victim's cognitive

-1-

abilities, both stating that the victim had never lived alone and could not be safely left home alone for more than approximately an hour. The victim's mother explained that the victim had the "social skills and mentality" of someone younger than 36 years old, that she had schizophrenia, and that she had been getting worse for approximately five years. She explained that defendant was a father figure to the victim, and that she had previously trusted defendant to be alone with the victim. A psychologist also testified about the victim's cognitive abilities, and she stated that the victim functioned at the level of a child between the ages of 6 and 10 years old.

Defendant testified that he had engaged in sexual acts with the victim on four or five occasions. He stated that he engaged with the victim to pacify her and that he did not have sex with her when her family was home because it would have been "rude." Defendant testified that the victim was independent, and he denied having any authority over her. The jury found defendant guilty of CSC-I, and the trial court sentenced defendant to 36 to 70 months' imprisonment.

Defendant appealed to this Court and also moved this Court to remand to the trial court to allow him to file a motion for a new trial and for resentencing. This Court granted defendant's motion. *People v White*, unpublished order of the Court of Appeals, entered September 26, 2019 (Docket No. 348009). On remand, the trial court ultimately denied defendant's motion or a new trial, but the court granted defendant's motion for resentencing. At resentencing, the trial court assessed two offense variables (OVs) different points and recalculated the sentencing guidelines. Defendant's guidelines did not change, and the trial court resentenced defendant to the same term of imprisonment.

On appeal, defendant argues first that there was insufficient evidence for the jury to find that the victim was mentally incapable or disabled.[1] We disagree.

This Court reviews de novo a defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). This Court views the "evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*. The reviewing court cannot weigh the evidence to determine if it would reach the same result as a jury, *People v Cain*, 238 Mich App 95, 119; 605 NW2d 28 (1999), and must draw all reasonable inferences and credibility determinations in support of the jury verdict, *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). When determining whether the evidence was sufficient, conflicts in the evidence must be resolved in favor the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 715 NW2d 57 (2008). This Court does not determine the credibility of

---

[1] In his brief on appeal, defendant provides the standard of review for a claim that a verdict was against the great weight of the evidence. Because defendant did not present this issue in his statement of issues presented as MCR 7.212(C)(5) requires, and because defendant failed to actually develop a great-weight-of-the-evidence argument, we need not address it. See *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004); *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

witnesses, as it is the jury's role to decide who and what to believe. *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997).

CSC-I, MCL 750.520b(1)(h)(*ii*), provides that a person is guilty of that offense if the victim is "mentally incapable, mentally disabled, mentally incapacitated, or physically helpless" and the defendant is "in a position of authority over the victim and used this authority to coerce the victim." MCL 750.520a(j) provides that to be mentally incapable "means that a person suffers from a mental disease or defect that renders that person temporarily or permanently incapable of appraising the nature of his or her conduct." The ability to appraise the nature of the conduct "encompass[es] not only an understanding of the physical act but also an appreciation of the nonphysical factors, including the moral quality of the act, that accompany such an act." *People v Breck*, 230 Mich App 450, 455; 584 NW2d 602 (1998). This Court has recognized that the rationale behind statutes "prohibiting sexual relations with a mentally incapable person is that such a person is presumed to be incapable of truly consenting to the sexual act." *Id*. Additionally, MCL 750.520a(i) provides that to be mentally disabled "means that a person has a mental illness, is intellectually disabled, or has a developmental disability."

Viewed in the light most favorable to the prosecution, the evidence was sufficient to establish that the victim was mentally incapable or disabled. See *Meissner*, 294 Mich App at 452. Elisabeth Smith, a psychologist, testified that the victim functioned at the level of a child between the ages of 6 and 10 years old and that she could be easily manipulated. Specifically, Smith stated that a person with the victim's characteristics could be easily talked into doing things without understanding the consequences. The prosecution introduced into evidence a report that Smith completed, which indicated that the victim was incapable of "making legal, medical, financial, and other essential decisions on her own and in her best interest." Additionally, the victim's mother and brother both testified that the victim was unable to take care of herself or safely be on her own for more than an hour. The victim was not employed, and she received Social Security benefits. Further, the victim was under a plenary guardianship at the time of the offense because the victim "was without total capacity to care for herself." This evidence was sufficient to permit the jury to find beyond a reasonable doubt that the victim was mentally incapable or disabled. See *People v Cox*, 268 Mich App 440, 444; 709 NW2d 152 (2005). Additionally, although defendant argues that there was insufficient evidence to find that the victim was mentally incapable to consent to sexual conduct because the victim had "an appreciation for the understanding of the act," the jury heard evidence that the victim did not know what sex was the first time that defendant asked her and she did not have full understanding of other, less consequential social norms. Therefore, the prosecution provided sufficient evidence from which the jury could conclude beyond a reasonable doubt that the victim was mentally incapable. See *Meissner*, 294 Mich App at 452.

Defendant also specifically argues that there was not sufficient evidence to support a finding that the victim was mentally disabled. However, the jury heard evidence that the victim had never lived on her own and needed reminders to engage in basic hygiene and to take her medication. Further, the victim had schizophrenia, and her symptoms would likely never completely abate. Although defendant's testimony conflicted with the other witnesses' testimonies about the victim's impaired functioning, because he testified that the victim had the ability to care for herself and consent to sexual acts, it was the jury's role to determine which, if any, testimony to believe and how much weight to give it. See *People v Bowyer*, 108 Mich App

517, 522; 310 NW2d 445 (1981). Therefore, the prosecution presented sufficient evidence that the victim was mentally incapable and disabled. See *Meissner*, 294 Mich App at 452.

Defendant argues next that there was insufficient evidence for the jury to find that he was an authority figure and used that authority to coerce the victim. We disagree.

A person need not hold a "formal position" in order to have a position of authority over a victim. *People v Reid*, 233 Mich App 457, 472; 592 NW2d 767 (1999). A defendant's authority can be the result of the victims being in a "position of special vulnerability with respect to the defendant." *Id*. Further, coercion is "not limited to physical violence but is instead determined in light of all the circumstances." *People v Brown*, 197 Mich App 448, 450; 495 NW2d 812 (1992). In some instances, a "finding of coercion necessitates an examination of whether [the defendant] was in a position of authority." See *People v Knapp*, 244 Mich App 361, 371; 624 NW2d 227 (2001).

Viewed in the light most favorable to the prosecution, the evidence was sufficient to establish that defendant had authority over the victim. See *Meissner*, 294 Mich App at 452. Defendant dated the victim's mother for approximately 11 years before this offense, and he was a regular visitor to the home during that time. The victim's mother trusted defendant to be alone with the victim and considered defendant to be a father figure to the victim because he treated her as one of his own children. Defendant told the family that he had experience working with individuals with disabilities, and he would encourage the victim to listen to her mother. Defendant's active efforts at supporting the victim and acting as a father figure in the victim's life support the jury's finding beyond a reasonable doubt that defendant was an authority figure. See *Reid*, 233 Mich App at 455. Therefore, the evidence was sufficient for the jury to find that defendant was an authority figure for the victim. See *Meissner*, 294 Mich App at 452.

Additionally, the evidence was sufficient to establish that defendant used his authority to coerce the victim. See *id*. Defendant was aware that the victim could be easily manipulated because he had observed neighbors borrow too much money from her, and he told the victim to keep the sexual acts secret from her mother, which the victim then did because she did not want her mother to be angry. Defendant only engaged in the sexual acts when he was alone with the victim, and he chose to stay alone with her on numerous occasions. Defendant used his relationship with the family members and their trust of him to be alone with the victim and exploit her vulnerabilities to engage in sexual acts. Although defendant minimally argues that the trial court did not properly instruct the jury that it needed to find both that he had authority and that he used it to coerce the victim, the trial court provided specific instructions on each element of the offense, including the requirement that defendant was both in a position of authority over the victim and used that authority to coerce her to submit to the sexual acts. See *Knapp*, 244 Mich App at 371. Therefore, the prosecution provided sufficient evidence that defendant used his authority to coerce the victim. See *Meissner*, 294 Mich App at 452.

Defendant argues next that he is entitled to resentencing because the trial court improperly scored OV 10, OV 11, and OV 13. He further argues that resentencing is necessary because his trial counsel's failure to object to the scoring of the OVs constituted ineffective assistance of counsel. We disagree.

This Court reviews de novo whether a trial court properly interpreted and applied sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). This Court reviews for clear error the trial court's findings in support of points it assesses under the sentencing guidelines. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The prosecution must prove by a preponderance of the evidence facts in support of a score. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). Clear error exists when this Court is left with a definite and firm conviction that the trial court made an error. *People v Buie*, 491 Mich 294, 315-316; 817 NW2d 33 (2012).

Under OV 10, MCL 777.40(b), a trial court properly assesses 10 points when a defendant "exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." When determining whether a victim was vulnerable for the purposes of OV 10, factors that the trial court can consider are as follows:

> (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. [*People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008).]

However, the "mere existence of one of these factors does not automatically render the victim vulnerable." *Id*. at 159. OV 10 does not require that a victim's susceptibility be inherent in the victim. *People v Huston*, 489 Mich 451, 466; 802 NW2d 261 (2011).

The sentencing court must review the defendant's PSIR before the court imposes a sentence. *People v Miles*, 454 Mich 90, 97; 559 NW2d 299 (1997). The trial court uses the PSIR to tailor the sentence to the offense and the offender. *People v Lampe*, 327 Mich App 104, 120; 933 NW2d 314 (2019). When calculating sentencing guidelines, the trial court may consider all record evidence, including the Presentence Investigation Report (PSIR), plea admissions, and testimony. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The trial court may also consider victim-impact statements and may make reasonable inferences from evidence in the record. *People v Earl*, 297 Mich App 104, 109-110; 822 NW2d 271 (2012).

The victim in this matter was mentally incapable or disabled. She was vulnerable on the basis of her low IQ and adaptive living skills, susceptibility to manipulation, inability to care for herself, and other mental health diagnoses including schizophrenia. Defendant was aware of the victim's impaired functioning as he had been her mother's boyfriend for approximately 11 years and had been to the home on a regular basis. Defendant attested to having experience with other individuals who had disabilities, which would seemingly indicate that defendant would have increased understanding of the victim's vulnerability. Despite defendant's clear understanding of the victim's disabilities, defendant asked the victim to have sex with him and continued to have sex with the victim on approximately five occasions when defendant stayed alone with her after her mother and brother would leave the home.

-5-

Further, defendant intentionally waited to be alone with the victim, refusing to engage in sexual acts when her family was home when he could be discovered, and told her to keep the incidents secret. See *People v Ackah-Essien*, 311 Mich App 13, 37; 874 NW2d 172 (2015). The prosecution charged defendant with CSC-I on the basis of the victim's vulnerability and defendant's authority over her, and the jury found beyond a reasonable doubt that evidence supported each element of the offense. See *People v McFarlane*, 325 Mich App 507, 536; 926 NW2d 339 (2018). Therefore, the trial court properly assessed 10 points for OV 10 because the victim was vulnerable, and defendant exploited that vulnerability in committing this offense.

A trial court properly assesses 25 points for OV 11, MCL 777.41(b), when a criminal sexual penetration occurred in addition to the one penetration that formed the basis of the CSC-I. In this case, the trial court clearly erred by assessing 25 points for OV 11 at defendant's first sentencing. See *Hardy*, 494 Mich at 438. However, the trial court ultimately assessed zero points for OV 11 upon resentencing. Defendant originally challenged OV 11 on appeal because the victim only testified about one instance of penetration in the sentencing offense. The prosecution agreed that the trial court improperly assessed points for OV 11, but the prosecution argued that the trial court should have assessed 25 points for OV 13. On remand, the trial court addressed the issue and properly assessed zero points for OV 11 and 25 points for OV 13, ultimately resulting in the same guidelines and same sentence. Therefore, the issue is moot. See *People v Richmond*, 486 Mich 29, 34; 782 NW2d 187 (2010).

Under OV 13, MCL 777.43(c), a trial court properly assesses 25 points when the "offense was part of a pattern of felonious criminal activity directly involving 3 or more crimes against a person." When a trial court assesses points for OV 13, "a trial court must count all relevant crimes within a five-year period, including the sentencing offense." *People v Bonilla-Machado*, 489 Mich 412, 424; 803 NW2d 217 (2011). The additional crimes need not result in a conviction and can be established by a preponderance of the evidence. MCL 777.43(2)(a); *Osantowski*, 481 Mich at 111.

In this case, a preponderance of the evidence supports the trial court's conclusion that defendant's action was "part of a pattern of felonious criminal activity involving [three] or more crimes against a person." MCL 777.43(1)(c). See *Osantowski*, 481 Mich at 111. The victim and defendant both testified about additional sexual acts occurring before the date of the sentencing offense, including defendant penetrating the victim with his penis and licking the victim. As the prosecution notes on appeal, "cunnilingus" constitutes sexual penetration. See MCL 750.520a(r). These prior penetrations would constitute additional charges of CSC-I, with the same elements as the sentencing offense, and, therefore, the trial court could reasonably infer that three or more felonious crimes occurred. See *Earl*, 297 Mich App at 109 (stating that a trial court may rely on reasonable inferences arising from record evidence when calculating sentencing guidelines).

Although defendant claims that "the sexual acts were between consenting adults," the jury found that the victim was mentally incapable. Further, defendant has not shown that the victim was mentally capable during any of the previous events when the evidence at trial showed that the victim had mental deficits for most, if not all, of her life. Even if the victim did not provide specific dates for the assaults, the trial court properly relied on sufficient information from the PSIR and trial to make a reasonable inference that three or more felonious crimes had occurred within a five-year period. See MCL 777.43(2)(a). See also *People v Petri*, 279 Mich App 407, 422; 760 NW2d

882 (2008). Defendant testified that he initiated sex on at least the first instance, he engaged in sexual acts with the victim on additional days, and the four or five sexual encounters occurred within the three weeks before the sentencing offense. The victim had been under a full guardianship for approximately four months before the sentencing offense because she was without capacity to care for herself. The trial court properly relied on this information to find that the sentencing offense was part of a pattern of three or more felonious crimes against a person. Therefore, the trial court properly assessed points for OV 13 on the basis of defendant sexually assaulting the victim on at least three occasions within a five-year period, and defendant is not entitled to be resentenced.

Defendant was also not denied effective assistance of counsel for trial counsel's failure to object to any of the OVs. Our review on this issue "is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). For a defendant to establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was objectively deficient and that the deficient performance prejudiced the defense. *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010). A counsel's performance was deficient if it fell below an objective standard of reasonableness under prevailing professional norms. See *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Counsel's performance prejudiced the defense if there is a reasonable probability that, but for the counsel's error, the outcome would have been different. See *id*. There exists a strong presumption that defense counsel's decisions constituted sound strategy. See *Heft*, 299 Mich App at 83. Failing to raise a futile objection does not constitute ineffective assistance of counsel. See *People v Moorer*, 262 Mich App 64, 76; 683 NW2d 736 (2004).

Defendant has not shown that counsel's performance was deficient nor that counsel's failure to object prejudiced him by failing to object to any of the challenged OVs. See *Fyda*, 288 Mich App at 450. The trial court properly assessed 10 points for OV 10 at all times, properly assessed zero points for OV 11 at resentencing, and properly assessed points for OV 13 at resentencing. Where the trial court ultimately resentenced defendant on the basis of properly scored guidelines, defendant was not prejudiced by trial counsel's failure to object. As a result, defendant was not denied effective assistance of counsel, and defendant is not entitled to be resentenced.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher