*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 7, 2021

Plaintiff-Appellee,

v

No. 347604
Ontonagon Circuit Court
LC No. 2018-000020-FH

PAUL DEAN SMITH,

Defendant-Appellant.

Before: REDFORD, P.J., and RIORDAN and TUKEL, JJ.

PER CURIAM.

Defendant, Paul Dean Smith, was convicted of breaking and entering without permission, MCL 750.115, first-degree home invasion, MCL 750.110a(2), possession of a dangerous weapon, MCL 750.224(1)(a), receiving and concealing stolen property, MCL 750.535(7), lying to a peace officer, MCL 750.479c(2)(c), escape from lawful custody, MCL 750.197a, and use of methamphetamine, MCL 333.7404(2)(a). Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to serve concurrent terms of 24 to 90 months' imprisonment for possession of a dangerous weapon and receiving and concealing stolen property, 93 days' imprisonment for breaking and entering, and 324 days' imprisonment for lying to a peace officer, escape from lawful custody, and use of methamphetamine, and to serve a consecutive term of 10 to 30 years' imprisonment for first-degree home invasion. We vacate defendant's receiving and concealing stolen property conviction, but we affirm his remaining convictions. We remand to the trial court for reasons stated more fully at the conclusion of this opinion.

## I. UNDERLYING FACTS

This case arises out of various events occurring in March 2018. On March 15, 2018, defendant crashed the vehicle he was operating into a five-foot snowbank on Carol and James Lombard's[1] property. Defendant then approached the residence, opened the unlocked outer and inner doors of the covered porch, and entered the house. Once inside, defendant asked, "[H]oney,

---

[1] The Lombards will be referred to by first name within this opinion.

I'm sorry to bother you, but can I borrow a shovel[?]" Carol was alone in the home at the time. In an effort to get defendant out of the house, Carol asked him to show her where he was stuck. Carol then told defendant that he would need to wait for her husband to return from some errands, and she retreated into the house, locked the doors, and called the police and some of her neighbors for help. When James and some neighbors arrived, they succeeded in helping defendant get the truck unstuck.

In the meantime, Michigan State Police Trooper Logan White arrived on the scene. Defendant informed Trooper White that his name was "Dustyn Thomas" and stated that he was driving from Iowa to Maryland. During the interaction, defendant was "sweating profusely," "acting very paranoid," and emitting "a strong odor of intoxicants," which Trooper White believed were behaviors consistent with the use of "a stimulant kind of drug."

Trooper White entered the information he obtained from defendant into the Law Enforcement Information Network (LEIN) and learned that "Dustyn Thomas" had just been released from jail on a first-degree burglary charge. Trooper White also learned that the truck that defendant was driving had been reported stolen. Trooper White then arrested defendant and proceeded to search him. During the search, he discovered a folding blade in one of defendant's pockets.[2] At that point, Trooper White became concerned because defendant began fading in and out of consciousness and defendant told Trooper White that he had "swallowed a couple baggies of heroin." Suspecting a possible overdose, Trooper White took defendant to a hospital emergency room. X-rays did not locate any foreign objects in defendant's body, and a course of laxatives also failed to produce any "heroin baggies." While at the hospital, defendant tested positive for methamphetamine.

Defendant ultimately was admitted to the hospital for observation, where he was served with a warrant for the arrest of Dustyn Thomas. During defendant's second day of observation, Michigan State Trooper William Fry was charged with guarding defendant and checking defendant's bowel movements for any heroin. On one such occasion, while Trooper Fry was in the restroom checking defendant's stool, defendant escaped through a fire exit door and ran from the hospital on foot, wearing a hospital gown and socks. Trooper Fry attempted to locate defendant but lost sight of him. Trooper Fry eventually was pointed in the right direction by a bystander and followed footprints in the snow to locate defendant.

After defendant escaped from the hospital, he approached the home of Gary DiFalco, who lived about one block from the hospital. Defendant attempted to enter DiFalco's home, but the door was locked. Defendant then began pounding on the door, saying that he was hurt and needed help. When DiFalco cracked the door open, defendant forced his way into the house, striking DiFalco in the groin with his knee and causing a bruise.

Concerned for his own safety, DiFalco attempted to placate defendant. He allowed defendant to use the restroom when asked. Defendant also asked DiFalco for his car keys and phone, but DiFalco convinced defendant that he did not have the keys to his wife's car and

---

[2] Brass knuckles were also eventually discovered in defendant's pockets during a later search.

volunteered to place defendant's calls for him. Finally, as defendant was changing into DiFalco's clothes, DiFalco left the house through the front door to call 911, but Trooper Fry arrived at that moment and arrested defendant. At that point, defendant began yelling that he was Paul Smith and claimed that the police had the wrong person. Defendant's true identity as Paul Smith was subsequently confirmed through fingerprinting.

The prosecution charged defendant with two counts of first-degree home invasion, one count of possession of a dangerous weapon, one count of receiving and concealing stolen property, one count of lying to a peace officer, one count of escape from lawful custody, and one count of use of methamphetamine. The matter eventually proceeded to a two-day jury trial, and the jury found defendant guilty of all charges except the first first-degree home invasion charge involving the Lombard residence. Instead, defendant was found guilty of the lesser included offense of breaking and entering without permission. Defendant was sentenced as outlined above.

## II. ADMISSION OF EVIDENCE RELATED TO THE VEHICLE

Defendant first argues that the trial court abused its discretion by admitting Trooper White's testimony regarding information he obtained from LEIN, under MRE 803(6), commonly referred to the business-use exception to the hearsay rule, without admitting the LEIN records themselves. The information from LEIN was offered to prove that the truck defendant was driving when he arrived at the Lombard residence was stolen. We agree that the LEIN evidence was inadmissible, and because the LEIN evidence was the only proof that the vehicle was stolen, we vacate the receiving and concealing stolen property conviction.[3]

## A. STANDARD OF REVIEW

This Court "review[s] for an abuse of discretion a trial court's decision to admit or exclude evidence," and reviews any preliminary legal questions of law de novo. *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010). Preliminary questions of law require a court to determine "whether a rule of evidence or statute precludes admissibility of the evidence." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). "[A] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011) (quotation marks and citation omitted).

---

[3] The prosecution argues that defendant abandoned this argument by failing to brief it adequately on appeal. However, defendant's brief in this Court states that "It is clear that the testimony was hearsay pursuant to MRE 801. It was an out-of-court statement offered for the truth of the matter asserted (that the vehicle in Mr. Smith's possession was reported stolen and that he was not the owner of the vehicle.)" While that may not have been a thorough discussion of the issue, it was sufficient to preclude a conclusion that the hearsay argument was abandoned.

B. ANALYSIS

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). The declarant, in this case, is whoever reported the vehicle stolen. That report to the police is an out-of-court statement which then found its way into LEIN, and which was used at trial to prove the truth of the matter asserted, viz., that defendant was driving a stolen vehicle when he arrived at the Lombard residence. As such, the records were hearsay and were only admissible if one of the exceptions to the hearsay rule applied. See *id*.

The trial court determined that the LEIN records relating to the vehicle defendant was driving were business records and, therefore, admissible as an exception to the hearsay rule under MRE 803(6). MRE 803(6) provides:

> A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

"The business records exception is based on the inherent trustworthiness of business records. But that trustworthiness is undermined and can no longer be presumed when the records are prepared in anticipation of litigation." *People v Jambor*, 273 Mich App 477, 482; 729 NW2d 569 (2007).

The prosecution failed to offer any evidence at trial to satisfy the requirements of MRE 803(6) and thus establish that the LEIN records at issue were admissible as business records. Indeed, no evidence was presented at trial establishing any of the foundational requirements of the business records exception: that the LEIN records were (1) "made at or near the time," (2) "by, or from information transmitted by," (3) "a person with knowledge" of whether the vehicle defendant was driving was in fact stolen. Furthermore, no evidence was presented to establish that the LEIN records were "kept in the course of a regularly conducted business activity," or that "it was the regular practice of that business activity to make the . . . record."[4] These foundational

---

[4] Such requirements can be established "by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification." We note that the certification option can be met pursuant to MRE 902(11), without the necessity of calling a witness. The prosecution, however, did not offer any

requirements were wholly unaddressed at trial. The LEIN records were explored at trial only to establish their existence, and their only use was to demonstrate that the truck was stolen. The existence of a record such as the LEIN records here, without an adequate foundation, is not enough to render the records admissible under MRE 803(6). Because the LEIN records were not admissible as business records, the trial court committed an error of law in admitting them.

The LEIN records purportedly showing that the truck defendant was driving was stolen constituted the entirety of the evidence admitted at trial establishing that defendant was in possession of a stolen vehicle. Establishing that a vehicle was stolen is a required element of the offense of receiving and concealing stolen property. See MCL 750.535 (providing, in relevant part, that "[a] person shall not buy, receive, possess, conceal, or aid in the concealment of a stolen motor vehicle knowing, or having reason to know or reason to believe, that the motor vehicle is stolen, embezzled, or converted."). Without this evidence, the prosecution could not establish beyond a reasonable doubt that defendant received or concealed stolen property. As such, the trial court's error of admitting evidence of the LEIN records was outcome determinative and, therefore, was not harmless.[5] See *People v Whittaker*, 465 Mich 422, 426-427; 635 NW2d 687 (2001) (holding that preserved nonconstitutional error is harmless unless it affected the outcome of trial). Consequently, we must vacate defendant's receiving and concealing stolen property conviction.

III. JURY INSTRUCTIONS

Defendant argues that the trial court erred by including an assault theory to support his home invasion conviction when it instructed the jury, because the felony information did not include such a theory of criminal liability. Defendant additionally argues that his trial counsel was ineffective for failing object to this jury instruction. We disagree with both arguments.

A. PRESERVATION AND STANDARD OF REVIEW

"To preserve an instructional error for review, a defendant must object to the instruction before the jury deliberates." *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). Defendant failed to do so. Thus, his jury instruction argument is unpreserved.[6]

Unpreserved issues are reviewed for plain error. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

---

of the foundational elements of a business record in either of the permissible manner, testimony or certification.

[5] Preserved nonconstitutional error, like the one at issue here, is only grounds for reversal if it is more probable than not that the error was outcome determinative. *People v Williams*, 483 Mich 226, 243; 769 NW2d 605 (2009); *Lukity*, 460 Mich at 495-496. An error is outcome determinative if it undermines the reliability of the verdict. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).

[6] All other issues in this case were properly preserved for our review.

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

"A 'clear or obvious' error under the second prong is one that is not 'subject to reasonable dispute.' " *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018).

## B. ANALYSIS

Waiver occurs "[w]hen defense counsel clearly expresses satisfaction with a trial court's decision." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). "The distinction . . . between counsel stating, 'I approve of the instructions,' and counsel stating, 'I have no objections,' is unavailing." *Id*. at 504-505. When waiver occurs, any error is extinguished "and precludes [a] defendant from raising the issue on appeal." *People v Carter*, 462 Mich 206, 209, 215; 612 NW2d 144 (2000). In this case, before instructing the jury, the court held a conference with both parties to review any objections. During the conference, the trial court asked defendant's trial counsel, "[D]o you have any objections to the proposed jury instructions?" Defendant's trial counsel expressly answered, "No, Your Honor." Thus, defendant's argument that the jury instructions were erroneous is waived.

Defendant, makes a second argument regarding the jury instructions, asserting that his trial attorney was ineffective for agreeing to the instructions. This argument is not waived. Consequently, to address defendant's ineffective assistance of counsel argument we will address whether the jury instructions were proper.

A trial judge must instruct the jury as to the applicable law. *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005). "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *Id*. Additionally, "[a] trial court may amend the information at any time before, during, or after trial in order to cure a variance between the information and the proofs as long as the accused is not prejudiced by the amendment and the amendment does not charge a new crime." *People v Stricklin*, 162 Mich App 623, 633; 413 NW2d 457 (1987).[7] Moreover, MCR 6.112(H) provides

---

[7] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citation omitted).

that "[t]he court before, during, or after trial may permit the prosecutor to amend the information or the notice of intent to seek enhanced sentence unless the proposed amendment would unfairly surprise or prejudice the defendant."

Initially, we note that the jury instructions provided to the jury at the beginning of trial regarding first-degree home invasion specifically included the following element: "that when the defendant entered, was present in, or was leaving the dwelling he committed an assault." Moreover, both the prosecutor and defendant's trial counsel, in their opening statements, addressed whether an assault had occurred. Indeed, defendant's trial counsel expressly stated, "I think now we may be just dealing with an assault in the DiFalco case and no larceny, but there won't be any evidence that my client assaulted Mr. DiFalco at any time." During the trial, defendant's trial counsel even attempted to impeach DiFalco on the basis of DiFalco's failure, in his original report to the police, to report an assault. Accordingly, defendant's trial counsel was at all times throughout the trial cognizant of the prosecution's assault theory and had an opportunity to present evidence and argument on the matter. More directly, there was no basis for objecting to the jury instruction, because it plainly addressed the assault contention, which had been raised throughout trial.

Moreover, during the preliminary examination, DiFalco testified that defendant had struck him on his way into the house, causing a bruise. At that time, the trial court found credible DiFalco's testimony about being struck and receiving a bruise and noted that under the statute, "the remaining element is, was this entry with the intent to commit a larceny therein or a felony or an assault and battery." Accordingly, after similar testimony was raised during the trial, the trial court could have amended the information "to cure a variance between the information and the proofs." See *Stricklin*, 162 Mich App 633; MCR 6.112(H). Indeed, given that defendant's trial counsel, in his opening statement, acknowledged that the jury would be asked to determine whether an assault had occurred, any failure by the trial court to amend the information was at most harmless, because the information could have been amended and defendant's trial counsel was aware of the assault issue throughout the entire trial and addressed it. See MCR 2.613 (providing that any error or defect by the court "is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice"). The totality of these circumstances supports a conclusion that the trial court did not err by providing final jury instructions that included both possible theories that the evidence could support. Consequently, because any challenge to the jury instructions would have been futile, defendant's trial counsel was not ineffective for failing to object to the final jury instructions. See *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007) ("Counsel is not ineffective for failing to make a futile objection.").

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant argues that insufficient evidence was presented to support his convictions of first-degree home invasion and lying to a peace officer. We disagree.

## A. STANDARD OF REVIEW

A valid criminal conviction requires proof beyond a reasonable doubt of every element of every crime. *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994). A challenge to the sufficiency of the evidence to support a criminal conviction presents a question of law subject to review de novo. *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001). When reviewing the sufficiency of evidence in a criminal case, a reviewing court must view the evidence of record in the light most favorable to the prosecution to determine whether a rational trier of fact could find that each element of the crime was proved beyond a reasonable doubt. *Id.* A reviewing court "must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992) (citation and quotation marks omitted). Our "standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (citation omitted). "Conflicting evidence and disputed facts are to be resolved by the trier of fact. Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019) (citations omitted). Similarly, "[c]ircumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Finally, "[d]ue process requires the prosecution in a criminal case to introduce sufficient evidence to justify a trier of fact in its conclusion that the defendant is guilty beyond a reasonable doubt." *People v Breck*, 230 Mich App 450, 456; 584 NW2d 602 (1998). As such, a conviction based on insufficient evidence violates due process. See *id*.

## B. FIRST-DEGREE HOME INVASION

Defendant argues that there was insufficient evidence to convict him of first-degree home invasion because the prosecution failed to establish that defendant intended to or did commit a larceny or assault after entering the DiFalco home. We disagree.

To establish first-degree home invasion, the prosecutor must prove that (1) the defendant either (a) broke and entered a dwelling; or (b) entered a dwelling without permission; (2) the defendant either (a) intended to commit a felony, larceny, or assault in the dwelling; or (b) while entering, present in, or exiting the dwelling the defendant committed a felony, larceny, or assault; and (3) while entering, present, or exiting the dwelling, the defendant was either (a) armed with a dangerous weapon; or (b) another person was present in the home. *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010).

At trial, DiFalco testified that defendant entered his house without permission. Defendant was wearing a hospital gown and told DiFalco that he had been injured and needed to use DiFalco's bathroom. When DiFalco cracked open the door, defendant pushed his way into the house. This testimony was sufficient to satisfy the first element of first-degree home invasion.

DiFalco also explained that when he cracked the door open to look at defendant's condition, defendant put his foot in the door and his knee hit DiFalco in the groin area, causing a

bruise. This testimony was sufficient to establish that an assault occurred while defendant was entering the home. Further, DiFalco testified that defendant demanded DiFalco's car keys, cell phone, and clothing. DiFalco testified that he thought defendant would hurt him if he did not comply. Given defendant's actions and the nature of what he said to DiFalco, a jury could reasonably infer that defendant intended to take possession of these items and use them in his attempt to escape law enforcement. This inference is sufficient to support a conclusion that defendant not only committed an assault upon DiFalco, but that he also had the intent to commit a larceny. Accordingly, the second element is satisfied.

Lastly, neither party disputed that DiFalco was present in the home when defendant entered, thereby satisfying the third element. Thus, there was more than sufficient evidence to support defendant's conviction of first-degree home invasion.

## C. LYING TO A POLICE OFFICER

Defendant argues that there was insufficient evidence to convict him of lying to a police officer during a police investigation because Trooper White never informed defendant that he was conducting a criminal investigation. We disagree.

MCL 750.479c(1), provides:

(1) Except as provided in this section, a person who is informed by a peace officer that he or she is conducting a criminal investigation shall not do any of the following:

(a) By any trick, scheme, or device, knowingly and willfully conceal from the peace officer any material fact relating to the criminal investigation.

(b) Knowingly and willfully make any statement to the peace officer that the person knows is false or misleading regarding a material fact in that criminal investigation.

(c) Knowingly and willfully issue or otherwise provide any writing or document to the peace officer that the person knows is false or misleading regarding a material fact in that criminal investigation.

This issue presents a close case. No direct evidence was offered at trial establishing that Trooper White informed defendant he was conducting a criminal investigation. Rather, only circumstantial evidence was offered at trial. Specifically, James Lombard testified that he informed defendant that Carol Lombard had called the police. Additionally, Trooper White testified that he asked another police officer to stay with defendant while White talked to the Lombards, stating:

I requested that – at this point in time Deputy Kitzman arrived on scene and I asked him to stay with my individual as I was conducting a criminal investigation, based on the information that I had received. So Deputy Kitzman had stayed with the individual while I went to make contact with the Lombards.

-9-

White eventually informed defendant that he was arresting defendant for home invasion and possession of a stolen truck. White additionally read defendant his *Miranda*[8] rights, which defendant waived. Defendant then informed Trooper White that he had swallowed multiple bags of heroin, so White took defendant to the hospital. At that time, White still believed that defendant was Dustyn Thomas, and thus was unaware that there was an arrest warrant outstanding for defendant. Nor does the record directly demonstrate that Trooper White informed defendant that he was conducting a criminal investigation relating to defendant entering the Lombards' home. But a jury is not required to base a conviction on direct evidence; instead, circumstantial evidence and reasonable inferences that arise from circumstantial evidence can establish proof of the elements of a crime. See *Kanaan*, 278 Mich App at 619.

Despite the lack of direct evidence, there nevertheless was sufficient circumstantial evidence in this case for the jury to find, beyond a reasonable doubt, that Trooper White informed defendant he was conducting a criminal investigation. The direct evidence offered at trial established that defendant was aware that the Lombards had called the police about him entering their home; Trooper White responded to the call; Trooper White talked to defendant and asked for defendant's name and other information; and that White asked Deputy Kitzman to stay with defendant while White talked with the Lombards. Additionally, after White finished talking with the Lombards, he informed defendant that he was arresting defendant. Construing the evidence in the light most favorable to the prosecution, as we are required to do, it was a permissible inference for the jury to conclude that at some point during this course of events Trooper White informed defendant that he was investigating whether a crime occurred when defendant entered the Lombards' home; the mere fact that Trooper White responded to their home, under the circumstances of defendant having entered it uninvited and without the Lombards' consent permissibly establishes that fact. Consequently, the first element was fulfilled through circumstantial evidence.

The false information defendant gave to Trooper White, that his name was Dustyn Thomas, was undoubtedly false and impeded the criminal investigation. Indeed, defendant was even served with a warrant that listed his name as Dustyn Thomas. Even if defendant first informed White that his name was Dustyn Thomas before Trooper White told defendant that he was conducting a criminal investigation, defendant continued to act as if he was Dustyn Thomas until he fled the hospital much later. Continuing to act as if the false name one had given previously was in fact one's read identity constitutes a "trick, scheme, or device" to "knowingly and willfully conceal from the peace officer any material fact relating to the criminal investigation." MCL 750.479c(1)(a). Additionally, after defendant waived his *Miranda* rights and was told that he was under arrest, he informed White that he had ingested multiple bags of heroin. But Trooper White testified that, at the hospital, no evidence that defendant had ingested any bags of heroin could be found. This too constituted a material trick, scheme, or device, because it was calculated to, and succeeded in having defendant taken to the hospital so that he could make his escape. The false statement about the heroin also caused Trooper White to bring defendant directly to the hospital, instead of processing him as a normal arrestee would have been, which would have led to his being fingerprinted and his true identity revealed. Thus, defendant's intentionally false statement about

---

[8] *Miranda v Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

the heroin could also be sufficient to sustain his conviction. Consequently, there was adequate evidence for the jury to find, beyond a reasonable doubt, that defendant violated MCL 750.479c(1).

## V. OFFENSE VARIABLE 19

Defendant argues that the trial court erred by assessing 15 points under offense variable (OV) 19 when calculating his sentence for first-degree home invasion. We disagree.

### A. STANDARD OF REVIEW

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011) (citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. "The sentencing Court may consider facts not admitted by the defendant or found beyond a reasonable doubt by the jury. Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *People v Roberts*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 339424) (2020); slip op at 4, reversed in part on other grounds by *People v Roberts*, ___ Mich ___; ___ NW2d ___ (Docket No. 161263).

### B. ANALYSIS

Generally, the scoring of the offense variables is offense specific. *People v McGraw*, 484 Mich 120, 126-127; 771 NW2d 655 (2009). But, "[u]nder the exception to the general rule set forth . . . in *McGraw*, OV 19 may be scored for conduct that occurred after the sentencing offense was completed." *People v Smith*, 488 Mich at 193, 202; 793 NW2d 666 (2010). "Because the circumstances described in OV 19 expressly include events occurring after a felony has been completed, the offense variable provides for the 'consideration of conduct after completion of the sentencing offense.' " *Id*. at 202, quoting *McGraw*, 484 Mich at 133-134.

A sentencing court is to assess 15 points under OV 19 if the defendant "used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). "Our Supreme Court has determined that the phrase 'interfered with or attempted to interfere with the administration of justice' is broader than the concept of obstruction of justice and that conduct subject to scoring under OV 19 'does not have to necessarily rise to the level of a chargeable offense . . . .' " *People v Passage*, 277 Mich App 175, 179-180; 743 NW2d 746 (2007) (alteration in original), quoting *People v Barbee*, 470 Mich 283, 287; 681 NW2d 348 (2004). Additionally,

interference with the administration of justice "encompasses more than just the actual judicial process. Law enforcement officers are an integral component in the administration of justice, regardless of whether they are operating directly pursuant to a court order." *Barbee*, 470 Mich at 287-288. "Conduct that occurs before criminal charges are filed can form the basis for interference, or attempted interference, with the administration of justice, and OV 19 may be scored for this conduct where applicable." *Id*. at 288. Finally, "OV 19 may also be properly scored when the sentencing offense itself necessarily involves interfering with the administration of justice." *People v Sours*, 315 Mich App 346, 349, n 1; 890 NW2d 401 (2016).

Defendant argues that the assessment of 15 points for OV 19 was improper because there was no evidence that he intended to interfere with the investigation that resulted in his conviction of first-degree home invasion. Rather, defendant argues that he cooperated with officers when they arrived at the DiFalco residence, and he did not interfere with the administration of justice. Defendant's argument lacks merit.

As the trial court noted, the assessment of 15 points under OV 19 is supported by this Court's decision in *People v Smith*, 318 Mich App 281; 897 NW2d 743 (2016). In *Smith*, this court upheld the assessment of 15 points under OV 19 when the defendant used force in the process of breaking and entering into a camper for the purpose of hiding from the police. *Id*. at 287-288.

In this case, defendant also used force against DiFalco—by assaulting him in the course of gaining access to the home, during his attempted escape from police. As noted earlier, defendant also demanded DiFalco's car keys, presumably to flee the area and avoid prosecution for the crimes identified in the warrant he had just been served. Defendant's acts, therefore, involved interference with the administration of justice.

Furthermore, to the extent that defendant claims that the conduct used to score OV 19 did not relate to the sentencing offense but rather to the home-invasion charge for which he was acquitted—i.e., his entrance into the Lombard's home—that argument is unsupported by any evidence supporting defendant's assertion and he offers none. Instead, the record before us supports a conclusion that OV 19 was correctly scored with respect to the DiFalco home invasion.

VI. PRESENTENCE INVESTIGATION REPORT

Defendant further argues that he is entitled to a remand and resentencing because the information within his presentence investigation report (PSIR) contains subjective statements by the probation officer that should be stricken. We disagree.

A. STANDARD OF REVIEW

This Court reviews a trial court's response to a claim of inaccuracy within a PSIR for an abuse of discretion. *People v Uphaus* (*On Remand*), 278 Mich App 174, 181; 748 NW2d 899 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Mahone*, 294 Mich App at 212. "A trial court also necessarily abuses its discretion when it makes an error of law." *Al-Shara*, 311 Mich App at 566.

B. ANALYSIS

At sentencing, either party may challenge the accuracy or relevancy of any information contained in the presentence report. MCL 771.14(6); MCR 6.425(E)(1)(b); *People v Lloyd*, 284 Mich App 703, 705; 774 NW2d 347 (2009). "A judge is entitled to rely on the information in the presentence report, which is presumed to be accurate unless the defendant effectively challenges the accuracy of the factual information." *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997). "If an effective challenge has been raised, the prosecution must prove by a preponderance of the evidence that the facts are as the prosecution asserts." *Lloyd*, 284 Mich App at 705. The trial court must allow the parties to be heard and must make a finding as to the challenge, or determine that a finding is unnecessary because the court will not consider the disputed information for sentencing. MCR 6.425(E)(2); *People v Waclawski*, 286 Mich App 634, 689-690; 780 NW2d 321 (2009). If the court finds that challenged information is inaccurate or irrelevant, that finding must be made part of the record, and the information must be corrected or stricken from the report. MCL 771.14(6); MCR 6.425(E)(2)(a); *Lloyd*, 284 Mich App at 705. The failure to strike, however, can be harmless error. *People v Fisher*, 442 Mich 560, 567 n 4; 503 NW2d 50 (1993); *Waclawski*, 286 Mich App at 690.

In this case, at the sentencing hearing, the trial court heard and addressed defendant's various objections to factual information within his PSIR. Defendant now suggests that additional portions of the report must be stricken because they are not neutral. More specifically, defendant requests a remand for the trial court to "strike and/or edit the narrative contained in the Evaluation and Plan" section of his PSIR because it is "filled with a subjective and opinionated statement by the probation officer." But defendant fails to identify any prejudicial statements or to dispute the accuracy of the information. Moreover, he cites no authority that would support his proposition that the information in this section must be neutral and we are not aware of any such authority. Instead, as noted by the trial court, MCL 771.14(2)(c) requires a PSIR to include, among other things, "[a] specific written recommendation for disposition based on the evaluation and other information as prescribed by the assistant director of the department of corrections in charge of probation." Further, MCR 6.425(A)(1) provides that "the probation officer must investigate the defendant's background and character, verify material information, and report in writing the results of the investigation to the court." Depending on the circumstances, the PSIR must include "a specific recommendation for disposition." MCR 6.425(A)(1)(k). Accordingly, defendant has not met his burden in challenging the information.

Furthermore, after reviewing the PSIR we do not find that any statements in it prejudiced defendant during sentencing. Thus, even if defendant was entitled to have the information stricken, the failure to strike this information was harmless error because it did not affect the sentence. In sum, defendant is not entitled to a remand for correction of the PSIR.

VII. REASONABLENESS AND PROPORTIONALITY OF SENTENCE

Lastly, defendant argues that the trial court erred by sentencing him to an unreasonable and disproportionate departure sentence on the basis of inaccurate scoring and information. We disagree.

As discussed earlier, the trial court did not err by assessing 15 points under OV 19. Defendant does not allege any other scoring errors and he has not presented any evidence of inaccurate information within his PSIR. Moreover, defendant's sentences fell within the properly calculated guidelines ranges. Consequently, defendant's sentences are not subject to a proportionality review on appeal. See MCL 769.34(10); *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004) (interpreting MCL 769.34(10) and holding that "if [a] sentence is within the appropriate guidelines sentence range, it is only appealable if there was a scoring error or inaccurate information was relied upon in determining the sentence and the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand"). See also *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) ("A sentence within the guidelines range is presumptively proportionate . . . ."). In sum, given that defendant's minimum sentences are within the appropriate guideline ranges, this Court must affirm defendant's sentences and may not remand for resentencing. MCL 769.34(10).

## VIII. CONCLUSION

For the reasons stated in this opinion, we vacate defendant's receiving and concealing stolen property conviction, but affirm his other convictions. We find no error in the trial court's application of OV 19, and based on the guideline range as calculated and the sentence imposed, we find that the sentence was proportional. Nevertheless, it is possible that as a result of vacating defendant's conviction for receiving and concealing stolen property the guideline range as to the remaining counts will change. We therefore remand this case to the trial court for it to (1) dismiss the receiving and concealing stolen property conviction, and (2) to consider, in the first instance, whether vacating the receiving and concealing stolen property conviction changes the guideline range for the remaining counts. If the trial court determines that the guideline range for the remaining counts is not changed by vacating that conviction, then defendant's sentence is affirmed. If, however, the trial court determines that vacating the receiving and concealing conviction changes the guideline range for his remaining convictions, then the trial court shall resentence defendant.

We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Jonathan Tukel

-14-