*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

KYLE GREGORY PARSONS,

      Defendant-Appellant.

UNPUBLISHED
November 21, 2023

No. 361892
Huron Circuit Court
LC No. 2021-306690-FH

Before: GLEICHER, C.J., and SWARTZLE and YATES, JJ.

PER CURIAM.

A jury convicted Kyle Gregory Parsons of one count of fourth-degree criminal sexual conduct (CSC-IV) under MCL 750.520e(1)(a) (sexual contact with a person from 13 to 15 years old), and two counts of CSC-IV under MCL 750.520e(1)(b) (sexual contact accomplished through force or coercion). These convictions arise from Parsons's sexual assaults of MS, a friend of Parsons's daughter. The jury acquitted Parsons of six counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (sexual penetration with a person from 13 to 15 years old).

Parsons challenges the sufficiency of the evidence supporting his convictions, and contends that (1) the prosecution and a witness for the prosecution improperly vouched for MS's credibility at trial by referring to MS as a "victim"; (2) the trial court erred by allowing MS to hold a stuffed animal while testifying; (3) the prosecution engaged in misconduct by (a) arguing facts not in evidence, thereby shifting the burden of proof, and (b) repeatedly calling Parsons a "pedophile" during closing arguments. Parsons argues that these deficiencies along with ineffective assistance of counsel violated his due process right to a fair trial. Although it was improper for the prosecution to refer to Parsons as a pedophile, this error did not deny Parsons a fair trial. Parsons's remaining claims are meritless. Accordingly, we affirm.

## I. BACKGROUND

MS testified that she was physically and emotionally abused by her parents and frequently sought comfort from Parsons, whom she initially considered a father figure. Parsons would hug MS to comfort her. When this occurred, MS recounted, Parsons would sometimes contact MS's

breasts and vaginal area. Parsons and MS communicated via text message and Snapchat,[1] and sometimes exchanged explicit photographs on Snapchat. As relevant to the CSC-III charges of which Parsons was acquitted, MS testified that she and Parsons engaged in oral sex once and vaginal sex twice, and that he inserted his finger in her vagina on four or five separate occasions.

MS reported the assaults in October 2018, and Detective Sergeant Kevin Knoblock from the Bad Axe Police Department investigated. Parsons's theory at trial was that MS fabricated the allegations and Parsons only intended to serve as a father figure to MS. Parsons was convicted as described earlier. He now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Parsons argues that his due-process rights were violated because insufficient evidence supported his convictions. We review de novo the question of evidentiary sufficiency, *People v Henry*, 315 Mich App 130; 135, 889 NW2d 1 (2016), viewing "the evidence in the light most favorable to the prosecutor" to "determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt," *People v Smith-Anthony*, 494 Mich 669, 676, 837 NW2d 415 (2013) (quotation marks and citation omitted). This standard of review is deferential. We must draw all reasonable inferences and make credibility determinations in favor of the verdict. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015).

"[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 240 n 3; 917 NW2d 559 (2018). Sufficient evidence supports a guilty verdict where "a rational trier of fact *could* find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010) (citation omitted; emphasis added); see also *Coleman v Johnson*, 566 US 650, 651, 656-657; 132 S Ct 2060; 182 L Ed 2d 978 (2012) ("A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. . . . [W]e conclude that the evidence at [the defendant]'s trial was not nearly sparse enough to sustain a due process challenge . . . .") (quotation marks and citation omitted). Circumstantial evidence and plausible inferences flowing from it may establish the elements of an offense. *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016).

Parsons was convicted of one count of CSC-IV under MCL 750.520e(1)(a), which requires sexual contact with a person from 13 to 15 years of age, and two counts of CSC-IV under MCL 750.520e(1)(b), which requires the prosecution to "establish that sexual contact was accomplished by an aggravating circumstance, including, but not limited to, force or coercion. . . ." *People v*

---

[1] As noted by this Court in *In re JP*, 330 Mich App 1, 4; 944 NW2d 422 (2019):

> Snapchat is an image messaging mobile phone application in which a user can send a photograph or text message with a set time to expire. The receiving user can only view the text message or photograph for one to ten seconds before the image or text message expires and is automatically deleted from the mobile phone.

*Crippen*, 242 Mich App 278, 284-285; 617 NW2d 760 (2000). The statutory definition of "sexual contact"

> includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner . . . . [MCL 750.520a(q).]

" 'Intimate parts' includes the primary genital area, groin, inner thigh, buttock, or breast of a human being." MCL 750.520a(f). MS testified that Parsons touched her breasts and genital area four or more times. Text messages exchanged between Parsons and MS in July 2018 support that Parsons had a sexual interest in MS, and it was undisputed that MS spent a considerable amount of time at Parsons's home. Between the content of the text messages and the locations of the touchings of MS, substantial evidence supported that Parsons intentionally touched MS's "intimate parts" for a "sexual purpose" or in a "sexual manner." See MCL 750.520a(q). Accordingly, there was sufficient evidence supporting Parsons's conviction of CSC-IV under MCL 750.520e(1)(a).

Whether there was sufficient evidence to support that Parsons used force or coercion to accomplish sexual contact as required to sustain his CSC-IV convictions under MCL 750.520e(1)(b) presents a somewhat more difficult question. Force or coercion includes, but is not limited to: (1) acts of physical force or violence, (2) threats of force, (3) threats of retaliation, (4) inappropriate medical treatment, or (5) concealment or surprise to overcome the victim. MCL 750.520e(1)(b)(*i*)-(*v*). "Michigan case law has consistently held that 'force or coercion' is not limited to the examples listed in the statute and that each case must be examined on its own facts." *Crippen*, 242 Mich at 283 n 2. Caselaw establishes that coercion can be established by a defendant's position of authority over a victim. *People v Regts*, 219 Mich App 294, 296; 555 NW2d 896 (1996); *People v Premo*, 213 Mich App 406, 410-411; 540 NW2d 715 (1995).

MS testified that she was physically and emotionally abused by her parents and viewed Parsons as a father figure. Parsons offered MS, who had low self-esteem, reassurance. Parsons also offered MS comfort when she was upset, and the comforting sometimes progressed to sexual contact. MS described that her "brain told [her] everything that [Parsons] was doing to [her] was, absolutely, wrong," and she should not "endure it. . . ." However, because MS's parents were "as mentally abusive as they were," MS "was not able to understand and cope [with] what [she] was feeling about that situation. . . ." MS noted that she did not "understand how the world works" because of her "situation" with her parents and her youth. When asked why she frequently stayed at Parsons's home, MS said she was between "a rock or a hard place" because of her parents, and she did not "really have a choice."

Although not overwhelming, this evidence sufficed for rational jurors to reasonably conclude that Parsons used coercion to accomplish sexual contact with MS—specifically, that Parsons used MS's unfortunate home situation, youth, naivety, self-esteem issues, and trust in him to induce her to submit to the sexual contact. While there is no evidence of physical violence or threat of physical violence, "the existence of force or coercion is to be determined in light of all the circumstances and is not limited to acts of physical violence." *Premo*, 213 Mich App at 410. Parsons's actions arguably constituted implied, legal, or constructive coercion because, as a trusted

adult who MS viewed as a father figure, Parsons was in a position of authority. See *id*. at 410-411. Additionally, as in *Premo*, the assaults occurred on the defendant's property. See *id*. at 411.

Critically, this was precisely the inference the prosecution wanted jurors to make. In particular, the prosecution asserted during closing arguments:

I think th[e] text messages tell a story. "I still love you." "Love you, too." Is that a father figure? Well, maybe, taken on its face. But when you take all of these into consideration, what it turns into is more of a breach of trust.

Father figure, well, ladies and gentlemen, we remember this exchange where [Parsons] seems to be counseling [MS], trying to help her out; but, then, mentions that, "It sounds like you need to stop by after you get home from camp." That's not a father figure. That's someone who's using a position of authority; taking a position of authority and misusing it. A father figure? Ladies and gentlemen, "Good night." "Love you." "Love you, too." I don't think so. This isn't his child. This isn't a normal type of relationship between an adult man and a teenage girl. This is an improper relationship with a child.

Father figure? I don't think so, ladies and gentlemen. She's talking about how life is rough and he ends the conversation with, "I miss you." Well, you heard testimony yesterday that he was asleep most of the time when she was there; but, yet, he misses her by text message when she's away at camp. I want you to think about that. Why does he miss her? He has his own family. He has his own kids. Why does he miss this teenage girl?

Father figure, ladies and gentlemen? I don't think so. Remember the text exchange about the sexual dream? He says, "I think I'm gonna leave that one alone." She asks, "Are you sure?" He responds, "No." And she says, "Didn't think so," or, "I thought so." Does that seem like a normal father-daughter exchange to you, ladies and gentlemen? He doesn't leave it alone. He continues it.

Father figure, ladies and gentlemen? I don't think so. "You need to get Snapchat back." Social media between an adult man and a teenage girl. It doesn't seem right. "Let me know if and when you do." What's goin' on on Snapchat? It doesn't seem like a father-daughter relationship.

Father figure? I don't think so, ladies and gentlemen. Mr. Parsons says, "I miss seeing you." "In what way," [MS] replied. "Just seeing you, talking to you." Well, that's an unusual exchange between an adult man and a teenage girl. I want you to think about these text exchanges. He misses seeing this teenage girl, not his daughter.

Father figure, ladies and gentlemen? I don't think so. "Check Snap." "Snap." "Snap." "Snap." All these text messages telling her to go check Snapchat. What's goin' on on Snapchat? I wish I could show you. Those are those records that we just can't get [because] they just don't exist after a time period; but it doesn't

seem like it's a normal relationship between a grown man and a teenage girl that he's sharing all of this information on social media.

> Ladies and gentlemen, you heard [MS] describe [Parsons] as her father figure. Maybe, it started out that way. What [MS] didn't realize from her father figure, though, was that he was grooming her for something that no father would ever wish upon his daughter. . . . Parsons took that trust that she had, that vision where [MS] saw [Parsons] as a caretaker, a protector, he took that trust, he wielded that power, and he perverted it into something evil. He was an authority figure. He was a role model for her; and he coerced [MS] into sexual acts.

We acknowledge Parsons's argument that the prosecution failed to present documentary evidence of the actual Snapchat or other communications supporting that Parsons and MS sent photographs, particularly any explicit photographs, to each other. But MS testified that she and Parsons exchanged explicit Snapchat photographs. MS's testimony did not need to be corroborated, see MCL 750.520h ("The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g."), and we are "required to draw all reasonable inferences and make credibility choices in support of the jury verdict," *Bailey*, 310 Mich App at 713 (quotation marks and citation omitted). See also *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009) ("The credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor."). Given the verdict, it appears the jury found MS to be at least partially credible.

When viewing all of the evidence in a light most favorable to the prosecution, the jury could have reasonably concluded beyond a reasonable doubt that Parsons accomplished sexual contact with MS through coercion, and that Parsons made sexual contact with MS's intimate parts when she was from 13 to 15 years old. Because there was sufficient evidence to support Parsons's convictions, this due-process argument fails. See *Oros*, 502 Mich at 240 n 3; *People v Breck*, 230 Mich App 450, 456; 584 NW2d 602 (1998); see also *Coleman*, 566 US at 656-657.

## III. REFERENCES TO MS AS A "VICTIM" DURING TRIAL

Parsons argues that Detective Sergeant Knoblock's references to MS as a "victim" during trial constituted improper vouching, the prosecution's and Knoblock's references to MS as a victim violated his due process right to a fair trial, and that his trial counsel was ineffective for failing to object to these references.

At no point before or during trial did Parsons raise a due-process or vouching argument relating to Knoblock or the prosecution calling MS a victim, thereby rendering this argument unpreserved. See *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021). "This Court reviews unpreserved . . . issues for plain error affecting a party's substantial rights." *Id*. at 564. To establish this, the following must be met:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden

of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (alteration in original; quotation marks and citations omitted).]

Further, because Parsons did not move the trial court for a new trial or for a *Ginther*[2] hearing, nor did he file a motion to remand for a *Ginther* hearing with this Court, we review his ineffective assistance claim for errors apparent from the record. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020); *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018); *People v Seals*, 285 Mich App 1, 19-20; 776 NW2d 314 (2009).

"The United States Constitution and the Michigan Constitution each guarantee that a criminal defendant receives due process of law. US Const, Am XIV; Const 1963, art 1, § 17." *People v Horton*, 341 Mich App 397, 401; 989 NW2d 885 (2022). "Implicit in this guarantee is that each criminal defendant enjoys the right to a fair trial, and essential to a fair trial is the defendant's right to be presumed innocent." *Id.* "Under the presumption of innocence, guilt must be determined solely on the basis of the evidence introduced at trial rather than on official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Id.* (quotation marks and citation omitted).

## A. DETECTIVE SERGEANT KNOBLOCK

Parsons argues his due-process right to a fair trial was violated because the trial court allowed Knoblock to refer to MS as a victim. As an initial matter, Michigan caselaw does not prohibit witnesses from referring to a complaining witness as a victim at trial in CSC prosecutions. MCL 750.520a(s) states, " 'Victim' means the person *alleging* to have been subjected to criminal sexual conduct." (Emphasis added.) MS, who made allegations of criminal sexual conduct against Parsons, fits within this definition. Contrary to Parsons's argument on appeal, Knoblock did not vouch for MS's credibility by referring to her as a victim. It is a "well-established principle that it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014) (quotation marks and citation omitted). Indeed, "it is the province of the jury to determine whether a particular witness spoke the truth or fabricated a cock-and-bull story[.]" *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013) (quotation marks and citation omitted). "[C]omments [on an individual's credibility] have no probative value because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." *Id.* (quotation marks and citations omitted).

Knoblock did not comment on MS's credibility. Rather, he referred to her as a victim, which is not prohibited under Michigan law. Knoblock explained the steps he took when

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

investigating MS's allegations against Parsons, and eventually referred the case to prosecutors, who authorized charges against Parsons. But Knoblock did not testify he that he confirmed MS's allegations. And at no point did Knoblock testify that MS's allegations were truthful. Cf. *Douglas*, 496 Mich at 583 (testimony that a caseworker, "based on her investigation," found that the complaining witness's "allegations had been substantiated" and that, "based on the disclosures made at Care House, there was no indication that [the complaining witness] was coached or being untruthful," was improper vouching).

In sum, the trial court did not plainly err by permitting Knoblock to refer to MS as a victim during trial. Consequently, Parsons's alternative ineffective assistance of counsel claim on this subissue necessarily fails. See *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998) ("trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile").

## B. THE PROSECUTION

It is well settled "[a] prosecutor may not vouch for the credibility of his [or her] witnesses by suggesting that he [or she] has some special knowledge of the witnesses' truthfulness." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). Prosecutorial vouching occurs when a prosecutor makes personal assurances of a witness's veracity or when a prosecutor claims to have personal information or "special knowledge" of which the jury is unaware, lending to the credibility of a witness. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). A prosecutor is, however, permitted to argue the evidence and all reasonable inferences drawn from the evidence. *Id*. at 282.

The prosecution never expressed personal knowledge that MS's testimony was truthful or asserted that he had "special knowledge" of her credibility. See *id*. at 276. Rather, the prosecution simply referred to MS as a victim. As stated, MS fits within the definition of victim outlined in MCL 750.520a(s). Accordingly, the prosecution's reference to MS as a victim did not constitute plain error, and Parsons's alternative ineffective assistance claim on this subissue also necessarily fails. See *Fike*, 228 Mich App at 182 ("trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile").

## IV. MS'S USE OF A STUFFED ANIMAL WHILE TESTIFYING AT TRIAL

Parsons argues that his due-process right to a fair trial was violated because the trial court allowed MS to hold a stuffed animal while testifying. He unsuccessfully moved in the trial court to preclude MS from holding the stuffed animal, and we review de novo his due process argument that the presence of the stuffed animal undermined his right to a presumption of innocence. *People v Warner*, 339 Mich App 125, 157; 981 NW2d 773 (2021) (quotation marks and citation omitted).

As stated, "[t]he United States Constitution and the Michigan Constitution each guarantee that a criminal defendant receives due process of law. US Const, Am XIV; Const 1963, art 1, § 17." *Horton*, 341 Mich App at 401. "Implicit in this guarantee is that each criminal defendant enjoys the right to a fair trial, and essential to a fair trial is the defendant's right to be presumed innocent." *Id*. "Under the presumption of innocence, guilt must be determined solely on the basis

-7-

of the evidence introduced at trial rather than on official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Id*. (quotation marks and citation omitted).

MCL 600.2163a relates to a trial court's decision to use special courtroom accommodations and states, in relevant part:

> (4) The court must permit a witness who is called upon to testify to have a support person sit with, accompany, or be in close proximity to the witness during his or her testimony. The court must also permit a witness who is called upon to testify to have a courtroom support dog and handler sit with, or be in close proximity to, the witness during his or her testimony. [MCL 600.2163a(4).]

A "witness" includes: (1) a person under 16 years of age; (2) a person 16 years of age or older with a developmental disability; and (3) a vulnerable adult. MCL 600.2163a(1)(g). MS did not qualify as a witness for purposes of MCL 600.2163a(1)(g). And stuffed animals are not contemplated under MCL 600.2163a(4), which only references support persons and animals.

But "the existence of MCL 600.2163a does not preclude trial courts from using alternative procedures to protect and assist witnesses while testifying. . . ." *People v Johnson*, 315 Mich App 163, 176; 889 NW2d 513 (2016). Indeed, "the Legislature provided that the protections set forth in MCL 600.2163a are 'in addition to other protections or procedures afforded to a witness by law or court rule.' " *Id*. See also MCL 600.2163a(22) ("This section is in addition to other protections or procedures afforded to a witness by law or court rule."). "While a trial court may rely on MCL 600.2163a to afford witnesses certain protections, it is well-established that trial courts have long had the inherent authority to control their courtrooms, which includes the authority to control the mode and order by which witnesses are interrogated." *Johnson*, 315 Mich App at 176-177 (quotation marks and citation omitted). See also MCL 768.29 ("It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved. . . .").

A trial court has broad authority to control the mode of witness interrogation, MRE 611(a), which "includes the ability to employ procedures that assist a witness when testifying, such as the use of a witness screen to prevent the witness from seeing the defendant, . . . and the use of two-way interactive videoconferencing[.]" *Johnson*, 315 Mich App at 177-178.

In *Johnson*, this Court held it was within the trial court's inherent authority to allow two young witnesses, one of whom was the complaining witness, to testify while accompanied by a support canine. *Id*. at 171, 175-179. At the time of the decision in *Johnson*, MCL 600.2163a(4) only allowed a support *person* to accompany a witness.[3] *Johnson*, 315 Mich App at 175. The *Johnson* Court held that although the statute then only permitted the use of a support person to

---

[3] The Legislature amended MCL 600.2163a(4), effective September 27, 2018, see 2018 PA 282, to provide for the use of both support persons and support dogs with their handlers, but limited their use to witnesses under the age of 16, over the age of 16 with a developmental disability, or a vulnerable adult.

accompany a witness, the trial court had inherent authority to allow a support animal "to ease the situation for a traumatized or fearful young witness while at the same time allowing the jury and the defendant to view the witness while testifying." *Id*. at 177-178. Like in *Johnson*, the trial court here exercised its inherent authority to control courtroom procedure by allowing the support stuffed animal "to ease the situation for" 19-year-old MS, who claimed to be traumatized by Parsons's actions, "while at the same time allowing the jury and . . . defendant to view" MS while she testified. See *id*. at 177-178.

We acknowledge that in *Johnson*, the defendant was accused of sexually assaulting his six-year-old niece, and the trial court permitted a support dog to be with the complaining witness and her ten-year-old brother during their testimony. *Johnson*, 315 Mich App at 171-172. Further, in *People v Shorter*, 324 Mich App 529, 538; 922 NW2d 628 (2018), this Court, distinguishing *Johnson*, stated that "there is a fundamental difference between allowing a support animal to accompany a child witness . . . and allowing the animal to accompany a fully abled adult witness. . . ." *Shorter* held the trial court did not have the inherent authority to permit an able-bodied adult to be accompanied by a support animal and the animal's handler while he or she testified at trial. *Id*. at 539-540.

Notwithstanding that MS was a fully-abled adult when she testified at trial, we find the facts in *Shorter* distinguishable. Holding a stuffed animal while testifying is less potentially prejudicial than testifying alongside an animal, or an animal and its handler. A stuffed animal is not a living, breathing thing. Unlike the service animals at issue in both *Johnson* and *Shorter*, a stuffed animal is an entirely neutral object and unlikely to engender the sympathetic reactions as would a person or a dog. See e.g., *Johnson*, 315 Mich App at 181 ("While dogs may signal the innocence of a witness, any signal from a dog will be much weaker than that emitted from an adult attendant. . . . [A] dog is neutral and does not understand any of the legal and factual arguments.") (quotation marks and citation omitted). For these reasons, we conclude that the trial court, within its broad ability to control trial proceedings, had the inherent authority to allow MS to hold a stuffed animal while testifying. See *id*. at 178.

Nonetheless, a trial court is not entitled to control the proceedings in its courtroom at the expense of a defendant's constitutional rights. *Johnson*, 315 Mich App at 179. "Every defendant has a due process right to a fair trial, which includes the right to be presumed innocent. In certain circumstances, courtroom procedures or arrangements undermine this presumption of innocence because the procedure or arrangement is deemed inherently prejudicial." *Id*. (quotation marks and citations omitted). "[I]f the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over. However, an inherently prejudicial procedure will not be upheld if the procedure was not necessary to further an essential state interest." *Id*. at 179-180 (alteration in original; quotation marks and citations omitted).

"When determining whether a practice is inherently prejudicial, a court will focus on whether the practice gives rise primarily to prejudicial inferences or whether it is possible for the jury to make a wider range of inferences from the use of the procedure." *Id*. at 180 (quotation marks and citation omitted). Here, the jury could have concluded MS held a stuffed animal to calm her general anxiety about testifying or being in an unfamiliar setting. See *Johnson*, 315 Mich App at 180. While the jury could have concluded MS was traumatized by the actions for which Parsons was charged, see *Shorter*, 324 Mich App at 542, the stuffed animal did not improperly

reflect upon Parsons's guilt.  Parsons argues the stuffed animal was akin to the jury seeing him in jail clothing or shackled, but we rejected the same essential argument in *Johnson*, stating, "In addition, the use of a support animal is unlike the inherently prejudicial practices of clothing a defendant in his prison outfit or the shackling of a defendant, as the use of a support animal does not brand [ ] a defendant with the mark of guilt."  *Johnson*, 315 Mich App at 180 (alteration in original; quotation marks and citation omitted).

Additionally, unlike the witnesses in *Johnson* and *Shorter*, MS was not accompanied by a support animal or animal handler, further mitigating any potential prejudice.  Although a support stuffed animal could convey to the jury MS was childlike and innocent, a stuffed animal is an entirely neutral prop, and inherently less prejudicial than a person or a dog.  See e.g., *Johnson*, 315 Mich App at 181.

Because Parsons has failed to establish that MS holding a stuffed animal was inherently prejudicial, he must show actual prejudice.  See *id*.  This he cannot do.  Indeed, the jury acquitted Parsons of six counts of CSC-III, instead convicting him of three lesser counts of CSC-IV.  See MCL 750.520d(2) ("Criminal sexual conduct in the third degree is a felony punishable by imprisonment for not more than 15 years."); MCL 750.520e(2) ("Criminal sexual conduct in the fourth degree is a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $500.00, or both.").  Given Parson's acquittals, the jury likely did not find MS's testimony wholly credible.  It is a stretch to conclude that the jurors unfairly evaluated the evidence based solely on the presence of the stuffed animal.  Because there is no indication Parsons's right to due process was violated, he is not entitled to a new trial on this basis.

Lastly, Parsons relies on *People v Chenault*, 227 Cal App 4th 1503; 175 Cal Rptr 3d 1 (2014), to support that the trial court improperly failed to make necessary findings before permitting MS to testify while holding a stuffed animal.  But we are not bound by *Chenault*.[4] Moreover, while the *Johnson* Court held that "as a practical matter it will be the better practice for a trial court to make some findings regarding a decision to use or not use a support animal," *Johnson*, 315 Mich App at 187, Parsons fails to cite any binding authority to support that specific factual findings were required in this situation.  Indeed, *Johnson* supports that factual findings are merely preferred, and that MCL 768.29 establishes the trial court's authority to control trial proceedings.  *Id*. at 188-189.  "[T]here is no requirement for a trial court to make any particular findings when exercising that power."  *Id*. at 189.  Because the trial court could allow the use of a stuffed animal if it was "useful to the expeditious and effective ascertainment of the truth," we fail to see how the trial court erred.  See *id*.

## V.  PROSECUTORIAL MISCONDUCT

Parsons argues the prosecutor engaged in misconduct during closing arguments by arguing facts not in evidence, thereby shifting the burden of proof, and by repeatedly calling Parsons a "pedophile."  These errors denied him a fair trial, Parsons contends, and his trial counsel was

---

[4] *People v Patton*, 325 Mich App 425, 434 n 1; 925 NW2d 901 (2018) ("Opinions of . . . foreign jurisdictions are not binding but may be considered persuasive.").

ineffective for failing to object to the former instance of misconduct. Although it was improper for the prosecution to call Parsons a pedophile, this error did not deny Parsons a fair trial.

"We review de novo claims of prosecutorial misconduct to determine whether [the] defendant was denied a fair and impartial trial." *People v Cox*, 268 Mich App 440, 450-451; 709 NW2d 152 (2005). We also review a defendant's constitutional due-process claim de novo. *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). But we review unpreserved[5] claims of prosecutorial misconduct for plain error affecting substantial rights. *Cox*, 268 Mich App at 451. Further, because Parsons did not move the trial court for a new trial or for a *Ginther* hearing, nor did he file a motion to remand for a *Ginter* hearing with this Court, we review his ineffective assistance claim for errors apparent from the record. See *Abcumby-Blair*, 335 Mich App at 227; *Head*, 323 Mich App at 538-539; *Seals*, 285 Mich App at 19-20.

"A defendant is entitled to a fair trial, not a perfect one." *People v Solloway*, 316 Mich App at 201. "A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *People v Dobek*, 274 Mich App 58, 63-64; (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. "The propriety of a prosecutor's remarks depends on all the facts of the case." *Id*. (citation omitted). "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*. "Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Id*.

"Prosecutors are given latitude with regard to their arguments. They are free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *People v Caddell*, 332 Mich App 27, 71; 955 NW2d 488 (2020) (alteration in original; quotation marks and citations omitted). However, "[a] prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). "While the prosecution may not use a defendant's failure to present evidence as substantive evidence of guilt, the prosecution is entitled to contest fairly evidence presented by a defendant." *Caddell*, 332 Mich App at 71-72 (quotation marks and citation omitted). "[W]here a defendant testifies at trial or advances, either explicitly or implicitly, an alternate theory of the case that, if true, would exonerate the defendant, comment on the validity

---

[5] To preserve an argument regarding prosecutorial misconduct, a defendant must object to the prosecutor's argument and request a curative instruction in the trial court. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Parsons never requested a curative instruction or otherwise objected to the prosecution's alleged reliance on facts not in evidence and the resultant shifting of the burden of proof, so this argument is unpreserved. However, while Parsons similarly never requested any curative instruction regarding the prosecution calling him a pedophile, he preserved this argument by objecting to these references and moving for a mistrial. See *People v Page*, unpublished per curiam opinion of the Court of Appeals, issued May 20, 2021 (Docket No. 350183), p 2, citing *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

of the alternate theory cannot be said to shift the burden of proving innocence to the defendant." *Id*. at 72 (quotation marks and citation omitted).

MS testified that Parsons (1) sexually assaulted her, (2) successfully encouraged her to send him inappropriate photographs through Snapchat, and (3) sent her naked photographs through Snapchat. Parsons testified that he did not sexually assault MS, merely acted as a father figure toward her, and did not send her inappropriate photographs. The prosecution was entitled to comment on defendant's testimony during closing arguments. See *Caddell*, 332 Mich App at 72. The prosecution did so by highlighting the inappropriate tone of the July 2018 text messages between MS and Parsons. The prosecution also argued that it was inappropriate for Parsons, a grown man, to communicate with MS, a teenage girl, on Snapchat. The prosecution acknowledged that the relevant Snapchat records were not in evidence, but noted certain records are only available for a limited amount of time. This argument was consistent with MS's and Knoblock's testimony. The prosecution's arguments in this respect, therefore, did not improperly shift the burden of proof. Rather, the prosecution's arguments about the tone of the text messages and Parsons's and MS's use of Snapchat only tended to debunk defendant's alternative theory.

While Parsons argues that the prosecution implied there was evidence of guilt the jury could not see and "urge[d] negative inferences from the inferred value of what [jurors] were not presented with," it appears the prosecution's arguments were made in response to defense counsel's arguments that there was a lack of evidence corroborating MS's testimony, particularly related to the Snapchat communications. At no point did the prosecution shift the burden of proof by implying that Parsons was required to "prove something or present a reasonable explanation for damaging evidence. . . ." See *Fyda*, 288 Mich App at 463-464. The prosecution also did not argue facts not in evidence. Instead, the prosecution noted that attorneys had followed "the rules" and only presented evidence that was permitted by the trial court and the court rules. The prosecution noted, "[S]ometimes, those court rules that we follow . . . don't allow us to tell you some things, that certain pieces of evidence can come in, and certain pieces of evidence can't. It happens." Here, the prosecution only specified the nature of the excluded evidence, and it certainly did not "argue the effect of testimony that was not entered into evidence." Cf. *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008) ("A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence."). Accordingly, plain error did not occur.

Further, even if plain error occurred, it did not affect Parsons's substantial rights. The trial court instructed the jury to decide the case based solely on the evidence, which did not include the attorneys' arguments. The jury was also instructed that Parsons was presumed innocent and could only be convicted if they found him guilty beyond a reasonable doubt. And the jury was instructed that the trial court would, at times, make evidentiary rulings. Jurors were thus likely aware certain evidence would not be before them. See *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011) ("Jurors are presumed to follow their instructions, and it is presumed that instructions

cure most errors."). For the same reasons, Parsons cannot establish the prejudice necessary to sustain his ineffective assistance claim on this issue.[6]

The prosecution's numerous references to Parsons being a pedophile, however, were improper. There is no evidence that Parsons is a pedophile. The common use of the word "pedophile" is "one affected with pedophilia"; pedophilia is defined as "sexual perversion in which *children* are the preferred sexual object." *Merriam-Webster's Collegiate Dictionary* (11th ed) (emphasis added). A "child" is defined as "a person not yet of age." *Merriam-Webster's Collegiate Dictionary* (11th ed).[7] Our Legislature has set the age of majority, for most purposes, at the age of 18. See MCL 722.52(1).

The prosecution presented no proof that Parsons sexually preferred people under the age of 18 years of age. While the record and verdict support that Parsons engaged in sexual contact with MS when she was from 13 to 15 years old, no evidence suggested that he engaged in sexual contact or sexually assaulted others who were underage. There is also no evidence Parsons was at risk of doing do so in the future. Given this evidentiary void, the prosecution erred by calling Parsons a pedophile during closing arguments.

Nevertheless, this error did not deny Parsons a fair trial. As already discussed at length, the prosecution presented sufficient evidence that Parsons accomplished sexual contact with MS's breasts and vaginal area through coercion. And while the prosecution's comments about pedophilia were improper and inflammatory, they were isolated and ceased after Parsons's objection. Indeed, only in one paragraph—out of almost six pages of total closing argument from the prosecution—did the prosecution use the term pedophile.

Additionally, it is unlikely these passing references to Parsons being a pedophile actually affected the jury because it acquitted Parsons of six counts of CSC-III, and instead convicted him of three counts of CS- IV. Moreover, the jurors were instructed that (1) they were the sole finders of fact; (2) Parsons was presumed innocent and could only be convicted if they found he was guilty beyond a reasonable doubt based on the evidence; and (3) counsels' arguments were not evidence.

---

[6] "The standards for 'plain error' review and ineffective assistance of counsel are distinct, and therefore, a defendant can obtain relief" under one theory even if they cannot obtain relief under the other. *People v Hughes*, 506 Mich 512, 523; 958 NW2d 98 (2020), citing *People v Randolph*, 502 Mich 1; 917 NW2d 249 (2018). However, because Parsons never pursued a *Ginther* hearing in this case, his prosecutorial misconduct claim and the underlying ineffective assistance claim are based on the same factual record, and the same facts support our conclusions under both the plain error and ineffective assistance frameworks.

[7] The Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), pp 256-257, requires the following criteria be met to clinically diagnose an individual with "pedophilia": (1) "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger)"; (2) acting "on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty"; and (3) the individual is "at least 16 years [old] and at least five years older than the child or children" referenced in the first criteria.

"It is axiomatic that jurors are presumed to have followed their instructions." *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). Despite the prosecution's inappropriate commentary, Parsons received a fair trial.

## VI. SUMMARY

The evidence sufficed to convict Parsons of three counts of CSC-IV. The trial court did not plainly err by permitting Detective Sergeant Knoblock and the prosecutor to refer to MS as a victim during trial, nor did it err by allowing MS to hold a stuffed animal while testifying. Although the prosecution erred by calling Parsons a pedophile, the error did not deny him a fair trial. For these reasons, Parsons's ineffective assistance and due process claims all fail.

We affirm.


/s/ Elizabeth L. Gleicher
/s/ Brock A. Swartzle
/s/ Christopher P. Yates